IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| CURTIS ROGERS, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | 1:23-CV-621 |
|  | ) |  |
| CITY OF GREENSBORO ABC BOARD, | ) |  |
|  | ) |  |
| Defendant. | ) |  |

**MEMORANDUM OPINION AND ORDER**

Catherine C. Eagles, District Judge.

After being fired from his job, the plaintiff, Curtis Rogers, filed this lawsuit against his former employer, City of Greensboro ABC Board. Mr. Rogers brings three claims under the Americans with Disabilities Act and two claims under the Family and Medical Leave Act. The Board now moves for judgment on the pleadings. The motion will be denied. Mr. Rogers has alleged facts sufficient to draw an inference that he has a disability under the ADA and a serious health condition under the FMLA, sufficient to support his disability discrimination, failure-to-accommodate, and FMLA interference claims. Allegations of a disability and a serious health condition are not necessary to state a retaliation claim under the ADA and the FMLA.

I. **Background Facts as Alleged**

According to the complaint, Mr. Rogers started working in the Board's warehouse in 2013. Doc. 1 at ¶ 8. About eight years later, he began experiencing pain in his feet "that substantially limited his ability to stand and walk for long periods of time." *Id.* at

¶ 9. On July 28, 2021, a medical professional diagnosed him with plantar fasciitis and told him to "stay off his feet for four days." *Id.* at ¶¶ 10–11.

Mr. Rogers informed his supervisor, Jason Milliken, about the diagnosis and asked for leave on July 29 and 30, 2021. *Id.* at ¶ 12. In response, Mr. Milliken reminded Mr. Rogers that July 30, 2021, was a "truck day," a busier than usual shift when employees unload trucks at the warehouse, and that if employees miss those days and "can't help [he doesn't] need them." *Id.* at ¶¶ 13–14.

Mr. Rogers returned to work on August 2, 2021. *Id.* at ¶ 15. He brought Mr. Milliken a note from a medical provider, stating that Mr. Rogers should not stand for long periods for four days and that Mr. Rogers would need a follow-up appointment in a week. *Id.* Mr. Milliken told Mr. Rogers that he should have come to work on July 30, 2021, and that he would talk to the Board's CEO about it. *Id.* at ¶ 16. Three days later, the Board terminated Mr. Rogers' employment. *Id.* at ¶ 17.

## II. Procedural Posture

Mr. Rogers filed disability discrimination, *id.* at ¶¶ 25–28, failure-to-accommodate, *id.* at ¶¶ 29–32, and retaliation, *id.* at ¶¶ 33–35, claims under the ADA against the Board. He also brought FMLA interference, *id.* at ¶¶ 36–38, and retaliation claims. *Id.* at ¶¶ 39–41. The Board has filed a motion for judgment on the pleadings. *See* Doc. 15.

## III. Legal Standard

Under Federal Rule of Civil Procedure 12(c), "a party may move for judgment on the pleadings," after the pleadings are closed and early enough to avoid delay in trial.

FED. R. CIV. P. 12(c).  The legal standard for evaluating a motion for judgment on the pleadings under Rule 12(c) is the same as a motion to dismiss for failure to state a claim under Rule 12(b)(6).  *See Occupy Columbia v. Haley*, 738 F.3d 107, 115 (4th Cir. 2013).

Under that standard, a court assumes the truth of the factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *PETA v. USDA*, 861 F.3d 502, 506 (4th Cir. 2017).  The complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  While legal conclusions "must be supported by factual allegations" that go beyond an "unadorned, the-defendant-unlawfully-harmed-me accusation," *id. at* 678–79, a plaintiff is not required to prove his case in the complaint.  *See Robertson v. Sea Pines Real Est. Cos.*, 679 F.3d 278, 291 (4th Cir. 2012); *Scott v. City of Durham*, No. 20-CV-558, 2021 WL 3856168, at *2 (M.D.N.C. Aug. 27, 2021).  The complaint's allegations should allow "the court to draw a reasonable inference that the defendant is liable for the misconduct alleged."  *Int'l Refugee Assistance Project v. Trump*, 961 F.3d 635, 648 (4th Cir. 2020) (quoting *Iqbal*, 556 U.S. at 678).

## IV. Americans with Disabilities Act Claims

To state a disability discrimination or failure-to-accommodate claim under the ADA, a plaintiff must plausibly allege, among other things, that he has a disability within the meaning of the ADA.  *See Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 572 (4th Cir. 2015) (ADA disability discrimination claim); *Cabrera Mejia v. Wal-Mart*, No. 14-CV-237, 2014 WL 5531432, at *2 (M.D.N.C. Nov. 3, 2014), *aff'd*, 599 F. App'x 520

3

(4th Cir. 2015) (ADA failure-to-accommodate claim). A person is disabled within the definition of the ADA if he has "a physical or mental impairment that substantially limits one or more major life activities;" "a record of such impairment;" or has been "regarded as having such an impairment." 42 U.S.C. § 12102(1). "Major life activities" include standing and walking. § 12102(2)(A).

In his complaint, Mr. Rogers says that he started experiencing pain in his feet that substantially limited his ability to stand for long periods in 2021, Doc. 1 at ¶ 9, and that he sought treatment for the condition in July 2021. *Id.* at ¶¶ 10–11. Mr. Rogers also alleges that the impairment "continues to limit his ability to stand or walk for long periods of time" as of July 2023, more than two years later. *Id.* at ¶ 21. These allegations are sufficient to draw the inference that Mr. Rogers' plantar fasciitis is a long-term condition that substantially limits his ability to stand and walk and thus is a disability under the ADA.

Mr. Rogers also alleges that after he told his supervisor about his plantar fasciitis diagnosis and requested leave, *id.* at ¶ 12, the supervisor told Mr. Rogers he didn't need employees who could not help at the warehouse. *Id.* at ¶ 14. Mr. Rogers says that when he returned to work and provided his supervisor with a note from a medical provider about his diagnosis and need for a follow up medical appointment, the supervisor told Mr. Rogers he would talk to the Board's CEO. *Id.* at ¶¶ 15–16. Then the Board fired Mr. Rogers within a week of disclosing his diagnosis. *Id.* at ¶ 17. These allegations are enough to support the inference that the Board's management regarded Mr. Rogers as having an impairment constituting a disability under ADA.

4

The Board contends that "the duration of any alleged impairment" Mr. Rogers has alleged "was remarkably short" and thus it was not a substantially limiting impairment that constitutes a disability under the ADA. Doc. 16 at 7. First, the Board cherry-picks Mr. Rogers' factual allegations and does not view them as a whole; he alleged not only that his medical provider told him "to stay off his feet for four days," Doc. 1 at ¶ 11, but also that the impairment has persisted for at least two years. *Id.* at ¶ 21.

Second, the Board relies on outdated caselaw for its contention that an impairment of a short duration cannot constitute a disability. *See* Doc. 16 at 7–9 (citing, *e.g.*, *Atkins v. USF Dugan, Inc.*, 106 F. Supp. 2d 799, 804 (M.D.N.C. 1999)). In 2008, Congress adopted amendments to the ADA expressly to override the Supreme Court's "strict construction of the term 'disability'" and suggestion "that a temporary impairment could not qualify as a disability under the Act." *Summers v. Altarum Inst., Corp.*, 740 F.3d 325, 329 (4th Cir. 2014). After the 2008 amendments, the EEOC promulgated new regulations clarifying that the "duration of an impairment is one factor that is relevant in determining whether the impairment substantially limits a major life activity." *Id.*

The Board is also incorrect that having a disability is an element of a retaliation claim under the ADA. *See* Doc. 16 at 9. The elements of a retaliation claim are that 1) the plaintiff engaged in protected activity; 2) his employer took an adverse employment action against him; and 3) there was a causal link between the two events. *See Jacobs*, 780 F.3d at 577. "A plaintiff need not show that [he] is disabled within the meaning of the ADA" to state a retaliation claim under the ADA. *Id.* The case the Board cites does not say otherwise. *See* Doc. 16 at 9; *Freilich v. Upper Chesapeake Health, Inc.*, 313 F.3d

5

205, 216 (4th Cir. 2002) (noting that to state an ADA retaliation claim, the plaintiff must allege that he "engaged in conduct protected by the ADA," not that he has a disability).

Mr. Rogers has alleged sufficient facts to support an inference that his impairment substantially limits his ability to stand and walk and thus that he has a disability. An allegation of a disability is not necessary for Mr. Rogers to state a retaliation claim under the ADA. The Board's motion for judgment on the pleadings as to Mr. Rogers' three ADA claims, Doc. 15; Doc. 16 at 9–10, will be denied.

V.  **Family Medical Leave Act Claims**

To state an FMLA interference claim, a plaintiff must plausibly allege that he is "afflicted with an FMLA-qualifying condition." *Rhoads v. F.D.I.C.*, 257 F.3d 373, 384 (4th Cir. 2001). Under the Act, a qualifying "serious health condition" means "an illness, injury, impairment, or physical or mental condition that involves continuing treatment by a health care provider." 29 U.S.C. § 2611(11)(B). The regulations further define "continuing treatment by a health care provider" as:

> (I) A period of incapacity (i.e., inability to work . . . due to the serious health condition, treatment therefore, or recovery therefrom) of more than three consecutive calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves: (A) Treatment two or more times by a health care provider, . . . ; or (B) Treatment by a health care provider on at least one occasion which results in a regimen of continuing treatment under the supervision of a health care provider.

*Krenzke v. Alexandria Motor Cars, Inc.*, 289 F. App'x 629, 633–34 (4th Cir. 2008).

Mr. Rogers has alleged facts sufficient to draw an inference that he has an FMLA-qualifying serious health condition. He alleges that on July 28, 2021, he was diagnosed

6

with plantar fasciitis and that the "doctor told him to stay off his feet for four days." Doc. 1 at ¶¶ 10–11. He also alleges that when he returned to work five days later on August 2, 2021, he provided his supervisor with a note from a medical provider, which stated that Mr. Rogers "should have no prolonged standing for the next four days and an after-visit summary stating that he . . . would need to follow up in a week." *Id.* at ¶ 15. Together, these allegations support an inference both that Mr. Rogers was incapacitated from his usual work as a warehouse worker for at least four days and that he received treatment for his impairment at least two times.

The Board contends that Mr. Rogers has not stated a claim for relief under the FMLA because his alleged impairment did not result in a period of incapacity of at least three days and is thus not a serious health condition. Doc. 16 at 11–12. The Board points to a letter from Mr. Rogers' medical provider, dated July 28, 2021, which states that Mr. Rogers "may return to work on 07/30/2021," Doc. 15-1; Doc. 16 at 12 n.3, to contend that Mr. Rogers was not incapacitated for the requisite number of days to qualify as a serious health condition. Doc. 20 at 6. But the same medical provider's note also states that Mr. Rogers should have "[n]o prolonged standing for the next 4 days," Doc. 15-1, and the provider's permission to return to work in two days does not necessarily mean Mr. Rogers was physically able to resume his usual duties as a warehouse worker.

The Board also contends that Mr. Rogers never requested FMLA leave from the Board. Doc. 20 at 6. The Board again ignores the applicable caselaw, which is clear that magic words are not required; all a defendant must do is notify the employer of the need for leave. *See Roberts v. Gestamp W. Va., LLC*, 45 F.4th 726, 733 (4th Cir. 2022). Here,

7

Mr. Rogers alleges that he told his supervisor about the plantar fasciitis diagnosis and asked for leave. Doc. 1 at ¶ 12. That allegation allows an inference that Mr. Rogers requested FMLA leave. If the Board supervisor did not understand that the request was for FMLA leave, it was his duty to clarify. *See Roberts*, 45 F.4th at 733. Mr. Rogers has alleged facts sufficient to draw an inference that he requested FMLA leave.

Finally, the Board is incorrect that having a qualifying serious health condition is an element of a retaliation claim under the FMLA. *See* Doc. 16 at 13. The elements of a retaliation claim under the FMLA are that 1) the plaintiff engaged in protected activity; 2) his employer took an adverse employment action against him; and 3) there was a causal link between the two events. *See Vannoy v. Fed. Rsrv. Bank of Richmond*, 827 F.3d 296, 304 (4th Cir. 2016). The case the Board cites, *Bryant v. Motorsports of Durham, LLC*, does not hold otherwise; there, the court explicitly said it need not resolve the issue of whether the plaintiff must allege an FMLA-qualifying condition and also identified caselaw that suggests it is not necessary, at least at the motion to dismiss stage. *See* No. 20-CV-1101, 2021 WL 2662200, at *11 n.14 (M.D.N.C. June 29, 2021) (Mag. J., recommendation), *adopted*, 2021 WL 4255108 (M.D.N.C. Sept. 17, 2021).

Mr. Rogers has alleged sufficient facts to support the inference that he has an FMLA-qualifying serious health condition. An allegation of a serious health condition is not necessary for Mr. Rogers to state a retaliation claim under the FMLA. The Board's motion for judgment on the pleadings as to Mr. Rogers' FMLA claims, Doc. 15; Doc. 16 at 13, will be denied.

It is **ORDERED** that the defendant's motion for judgment on the pleadings, Doc. 15, is **DENIED**.

This the 15th day of April, 2024.

_____
UNITED STATES DISTRICT JUDGE