## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

CURTIS ROGERS,

     Plaintiff,

v.

CITY OF GREENSBORO ABC BOARD,

     Defendant.

**Civil Action No. 1:23-cv-621**

## BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Defendant Greensboro ABC Board (the "Board") submits this brief in support of its Motion for Summary Judgment (ECF No. 28) (the "Motion").

## NATURE OF THE MATTER BEFORE THE COURT

Plaintiff alleges disability discrimination, failure to accommodate, retaliation, FMLA interference, and FMLA retaliation. Central to Plaintiff's claims are assertions that his plantar fasciitis constituted both a disability under the ADA and a serious health condition under the FMLA. Although Plaintiff alleged that his "plantar fasciitis continues to limit his ability to stand or walk for long periods of time," he failed to produce any evidence in discovery to support this assertion. In fact, the *lack of documents* produced by Plaintiff show that there are no genuine disputes of material fact that Plaintiff's claims under the ADA and the FMLA fail as a matter of law.

Plaintiff asserts that his diagnosis of plantar fasciitis—which resulted in his being written out of work for two days and an instruction to have no prolonged standing for a period four days—constitutes a disability under the ADA and a serious health condition

1

under the FMLA. *Plaintiff, however, has produced no evidence that his "disabling" condition lasted more than four days.* Accordingly, for the reasons set out below, the Board is entitled to summary judgment on all of Plaintiff's claims.

## STATEMENT OF FACTS

### A. Plaintiff's Plantar Fasciitis Diagnosis

On July 28, 2021, Plaintiff was seen by a nurse practitioner at a FastMed Urgent Care complaining of foot pain. Accordingly, the nurse practitioner provided Plaintiff with a note ("the Note") excusing "his absence from work on this day to make the appointment" and releasing him to "return to work on 07/30/2021." (ECF No. 15-1). The Note also recommended that Plaintiff not engage in "prolonged standing for the next 4 days. (*Id.*). The Note did not contain a diagnosis or make reference to any medical condition, nor did it indicate a need for any additional treatment (*Id.*).

Following his visit, Plaintiff informed his supervisor of his alleged diagnosis and requested off work for the remainder of that day as well as Thursday, July 29 and Friday, July 30. (Ex. 1 – Rogers-PL-000003 ("I'll be out Thursday and Friday. I went to the doctor today for my foot…")). Plaintiff explicitly told his supervisor that he "had a doctors [sic] note as well" to excuse his absence. (*Id.*). When Plaintiff returned to work on Monday, August 2, he presented the Note to his supervisor. (ECF No. 15-1). However, the Note only excused Plaintiff from work for July 28 and 29, and explicitly cleared him to return on Friday, July 30, 2021. (*Id.*).

Contrary to Plaintiff's allegations in the Complaint, July 30, 2021 was not a truck delivery day. (Ex. 2 – Declaration of Teresa Pitts (hereafter "Pitts Decl."), ¶10). Had

2

Plaintiff returned to work on July 30, 2021, it would have been a regular workday. (*Id.*) Therefore, Plaintiff would have been able to perform a number of tasks without having to engage in "prolonged standing," including but not limited to driving the forklift, riding in the truck between stores, helping with some of the unloading of product at the stores, and attending various meetings throughout his shift. (Ex. 3 – Declaration of Misty Walters, ¶5). Further, had Plaintiff reported to work on Friday, July 30, 2021 with the Note restricting his ability to engage in "prolonged standing," the Board would have reasonably accommodated him by modifying his duties and providing additional breaks, if needed. (Pitts Decl., ¶11). Plaintiff has provided no evidence that he would have been unable to perform those tasks.

Instead, Plaintiff failed to report to work entirely, despite the Note's plain language that he was cleared to do so, and then attempted to present the Note to justify his absence on that day. (ECF No. 15-1). This constituted a violation of the Board's attendance policy. (*See* Pitts Decl., Ex. A).

When Plaintiff returned to work on August 2, 2021, he did not have any restrictions. In other words, when he returned to work after his three-day absence, two of which were pursuant to medical authorization, there were no restrictions placed on him by any medical professional. Moreover, Plaintiff did not request any kind of accommodation or provide any medical documentation indicating that he continued to suffer from any medical condition from the time he returned to work until his termination on August 5, 2021.

3

### B. Plaintiff's Lack of Medical Documentation

Although it was not provided to the Board during his employment, Plaintiff produced an after visit summary (the "Summary") as part of his EEOC charge. (*Id.*, ¶8). It is only in the Summary that there is an indication that the issue addressed at the Urgent Care visit was "Plantar fasciitis." (ECF No. 17-1).

There are two critical statements contained in the Summary, which when taken in context with subsequent events are fatal to Plaintiff's case. First, the Summary clearly states that Plaintiff had no upcoming appointments scheduled with Urgent Care. Thus, he was not going to receive ongoing treatment from this healthcare provider. Second, the Summary instructed Plaintiff to "[m]ake an appointment with primary care provider." (*Id.*). Specifically, the Summary stated that Plaintiff should [f]ollow-up in about 1 week (around 8/4/2021) for Recheck with your doctor." (*Id.*). However, in discovery, Plaintiff confirmed that the only medical provider that he *ever saw* related to his purported ailment was the FastMed nurse practitioner on July 28, 2021. (Ex. 4 – Plaintiff's Responses to Defendant's First Set of Interrogatories, p.9-10). Tellingly, when asked to identify—in both his initial disclosures and in written interrogatory responses—any individual likely to have discoverable information related to his claims, Plaintiff did not disclose *any* medical professionals. (*Id.*, p.2; Ex. 5 – Plaintiff's Initial Disclosures, pp.1-3).

While it could be inferred from the pleadings – taken in the light most favorable to Plaintiff – that Plaintiff sought and received additional treatment after his initial Urgent Care visit, the uncontroverted evidence is that he did not. Despite his allegation that plantar fasciitis "continues to limit his ability to limit his ability stand or walk for long periods of

time," Plaintiff has produced no medical records in discovery indicating that he ever had a follow-up appointment or otherwise sought treatment for his alleged condition after July 28, 2021. To be clear: despite stating as recently as March 12, 2024 in his Response in Opposition to Defendant's Motion for Judgment on the Pleadings that "evidence produced through discovery will show that [Plaintiff's] plantar fasciitis continued to worsen after his termination," (ECF No. 17, pp.6-7), Plaintiff has not produced *a single document* reflecting that he has ever been treated or seen for plantar fasciitis, or has continued to suffer from plantar fasciitis in the nearly three years since his visit to FastMed Urgent Care. (Ex. 4, p.9-10).

Additionally, Plaintiff has produced no evidence to indicate he ever requested any reasonable accommodation or FMLA leave. The Board uses various means to inform its employees of their right to request FMLA leave or request a reasonable accommodation under the ADA. (*See* Pitts Decl., ¶¶4-5). Employees are both informed of their rights to request FMLA leave upon completing their new hire paperwork, in the Board's employee handbook, and through posters hanging in the Board warehouse facility. (*Id.*). Plaintiff did not ask for any kind of accommodation on Friday, July 30, 2021. Instead, he untruthfully told his supervisor that he had a note excusing him from work for that day, and simply did not report to work. Moreover, Plaintiff had no work restrictions as of August 2, 2021. At no time from his return to work through his termination did he claim that he was disabled, present any evidence that would have put the Board on notice of any type of restriction, or request leave for any additional treatment.

5

## C. Plaintiff's History of Board Policy Violations

Throughout Plaintiff's employment with the Board, he received numerous written warnings for his violations of Board policies. (*Id.*, Ex. B). As such, Plaintiff had been placed on probation on December 28, 2020, and he was notified that any further violation of Board policy could lead to further disciplinary action up to and including termination. (*Id.* at p.3). After reviewing the situation, including Plaintiff's history of policy violations, the Board terminated Plaintiff's employment on August 5, 2021. (*Id.* ("After numerous warnings and write ups, you have failed to comply with the following standards: work performance, personal hygiene and attendance.")).

Plaintiff's lack of evidence fails to provide support for any of his causes of action. Although the Note explicitly released Plaintiff to return to work on July 30, Plaintiff did not return to work until August 2, and he offered no explanation for his failure to report to work as the Note proscribed. (ECF No. 1, ¶ 15). Thus, as Plaintiff's absence was not afforded protection by the ADA, FMLA or any other federal or state law, and Plaintiff offers no documentation to excuse his absence on July 30, Plaintiff's claims all fail as a matter of law.

## QUESTIONS PRESENTED

I.      Does Plaintiff's Temporary Ailment Constitute a Disability When Plaintiff Was Excused From Work for Only Two Days and He Provided No Medical Evidence of Follow-Up Care or Continuing Impairment or Treatment?

II.     Under the FMLA, Does Plaintiff's Temporary Impairment Which Lasted Only Two Days and Required No Follow-Up Care Qualify as a Serious Health Condition?

III.     Under Both the ADA and the FMLA, Can Plaintiff Prove His Retaliation
         Claims When He Provided No Evidence That He Ever Engaged in Protected
         Activity?

## **LEGAL STANDARD**

Summary judgment is appropriate because there is no genuine issue as to any

material fact and the Board is entitled to judgment as a matter of law. *See* Fed. R. Civ. P.

56(a) ("The court shall grant summary judgment if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter

of law."). "[A] factual dispute is genuine only where the [non]movant's version is

supported by sufficient evidence to permit a reasonable jury to find in its favor." *United*

*States v. 8.929 Acres of Land in Arlington County, Virginia*, 36 F.4th 240, 252 (4th Cir.

2022) (alterations in original). *See also Boone v. Board of Governors of Univ. of North*

*Carolina*, 395 F.Supp.3d 657, 665-666 (M.D.N.C. 2019) (internal quotations omitted)

("In cases where the nonmovant will bear the burden of proof at trial, the party seeking

summary judgment bears the initial burden of pointing out to the district court that there

is an absence of evidence to support the nonmoving party's case.").

Thus, once the movant satisfies the initial burden of demonstrating "an absence of

evidence to support the nonmoving party's case," the burden shifts to the nonmovant to

"present specific facts showing that there is a genuine issue for trial." *Id.* (quoting

*Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 540 (4th

Cir. 2015)). In so doing, the nonmoving party must rely on "more than conclusory

allegations" or "mere speculation," but instead "the nonmoving party must establish that

a material fact is genuinely disputed by, *inter alia*, citing to particular parts of the

7

materials of record." *Id.* (citing Fed. R. Civ. P. 56(c)(1)(A)). *See also Boone*, 395

F.Supp.3d 666 (quoting *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993)).

("The judicial inquiry on summary judgment thus scrutinizes the plaintiff's case to

determine whether the plaintiff has proffered sufficient proof, in the form of admissible

evidence, that could carry the burden of proof of his claim at trial."). Because Plaintiff

has not proffered sufficient proof to carry the burden on any of his claims, the Board is

entitled to summary judgment.

## <u>ARGUMENT</u>

I. **Plaintiff Has Not Shown That His Temporary Ailment Requiring Two Days Off Work And Four Days Of No Prolonged Standing Qualifies as a Disability Under the ADA.**

Plaintiff has not provided any evidence to support his claims for either disability

discrimination or failure to accommodate under the ADA. "The ADA prohibits employers

from discriminating against a qualified individual on the basis of disability." *Cowgill v.

First Data Technologies*, Inc., 41 F.4th 370, 378 (4th Cir. 2022) (cleaned up) (quoting 42

U.S.C. § 12112(a)). As such, causes of action for disability discrimination and failure to

accommodate under the ADA require Plaintiff to *prove* he had a disability. *See, e.g.*,

*Cowgill*, 41 F.4th at 379 ("To establish a prima facia case of disability discrimination, a

plaintiff must show (i) **she was disabled**, (ii) she was discharged, (iii) she was fulfilling

her employer's legitimate expectations when she was discharged, and (iv) the

circumstances of her discharge raise a reasonable inference of unlawful discrimination.")

(emphasis added); *Allen v. City of Raleigh*, 140 F.Supp.3d 470, 483 (E.D.N.C. 2015) ("To

establish a prima facie case in an ADA failure-to-accommodate claim, a plaintiff must

8

prove: (1) **he has a disability within the meaning of the ADA**; (2) the employer had notice of his disability; (3) with a reasonable accommodation, he could perform the essential functions of the position; and (4) the employer refused to make such an accommodation.") (emphasis added).

A person is disabled as under the ADA if he has "a physical or mental impairment that substantially limits one or more major life activities;" "a record of such impairment;" or has been "regarded as having such an impairment." 42 U.S.C. § 12102(1). Plaintiff has not provided evidence to support any of these categories of disabilities under the ADA.

An individual has a "record of" an impairment when that individual has "a history of, or has been misclassified as having, a...physical impairment that substantially limits one or more major life activities." *Reynolds v. American Nat. Red Cross*, 701 F.3d 143, 153 (4th Cir. 2012) (alteration in original) (determining that one doctor's note was not "sufficient to satisfy this requirement"). In reviewing a motion for summary judgment, the Fourth Circuit emphasized that "unless the purported medical records were placed in the record—which they admittedly were not—they do not, in fact, exist" for the purposes of reviewing the motion. *Id.* Therefore, by failing to provide any medical documentation plaintiff "failed to satisfy his burden of production" to prove any "record of" an impairment. *Id.* at 152-53. *See also Lusby v. Savannah River Nuclear Solutions, LLC*, 1:20-cv-1165, 2022 WL 897151, at *4 (D. S.C. Mar. 28, 2022) (holding that Plaintiff had not established he had a "record of" an impairment, in part because the records reflected he could return to work without restriction).

9

Here, Plaintiff has produced only the original Note and Summary, neither of which establish that he suffered from a disability under the ADA. Plaintiff has not produced any medical records showing that he any ongoing disability or treatment for such disability. Since Plaintiff concedes that he has not seen any healthcare professional for his alleged disability other than the Urgent Care nurse practitioner or proffered any evidence of being misclassified as having an impairment, Plaintiff does not have a "record of" an impairment under the ADA.

Plaintiff also cannot establish that he was "regarded as" disabled under the ADA. There are two ways an individual may fall within the "regarded as" category: "(1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities." *Blackburn v. Trustee of Guilford Technical Community College*, 733 F.Supp.2d 659, 662-63 (M.D.N.C. 2010). Where a Plaintiff has asserted that he is impaired, the first definition is inapplicable. *See Bennet v. Kaiser Permanente*, 931 F.Supp.2d 697, 711 (D. Md. 2013). It is undisputed that Plaintiff has asserted his disability, conclusively closing the door on this path.

The second definition is likewise inapplicable because the Board specifically demonstrated its desire for Plaintiff to return to work the day the Note cleared him to do so. *See Taylor v. Rite Aid Corp.*, 993 F.Supp2d 551, 565 (D. Md. 2014) (holding that Plaintiff could not prove she was "regarded as" disabled when the company offered her a

position in which she could continue to work). Accordingly, there is no basis for any contention that the Board regarded Plaintiff as having a disability under the ADA.

A. Plaintiff Does Not Have an Impairment that Substantially Limits One or More Major Life Activities.

While at the motion to dismiss stage, Plaintiff may rely on his factual allegations, at the summary judgment stage, Plaintiff must provide evidence to support those allegations. *Humphreys*, 790 F.3d at 540 ("The party moving for summary judgment discharges its burden by showing that there is an absence of evidence to support the nonmoving party's case....If the movant discharges this burden, the nonmoving party must present specific facts showing that there is a genuine issue for trial."). Summary judgment is appropriate here because Plaintiff has provided no evidence to support his allegations that he has an impairment which substantially limits any major life activities.

"[T]he Fourth Circuit has explained, [that the ADA] simply was not designed to protect individuals with broken bones, sprained joints, sore muscles, infectious diseases, or other ailments that temporarily limit an individual's ability to work." *Caldwell*, 2016 WL 1736388 at *5 (internal quotations omitted) ("Under the current regulations, . . . not every impairment will constitute a disability."). *See also Smith v. Charter Communications, Inc.*, 3:18-cv-80, 2020 WL 3606391, at *7 (W.D.N.C. July 2, 2020) (granting summary judgment because the "Plaintiff's condition required only a relatively short [one-month] leave before Plaintiff's doctor released him to work without restriction"). The ADA only protects those individuals who have an impairment which substantially limits one or more major life activities. *See Israelitt v. Enterprise Services,*

11

*LLC*, 78 F.4th 647, 654 (4th Cir. 2023) (holding that the employee's "impairment [was] minor, not substantial" and accordingly did not qualify as a disability under the ADA). .

In *Tarokh v. Wal-Mart Stores East, LP*, even though an employee claimed his knee injury impaired his ability to walk, kneel, and bend, the court granted summary judgment for the employer when it concluded "that Plaintiff has failed to present sufficient evidence to create a question of fact as to whether his knee injury substantially limits a major life activity." 2:21-cv-02719, 2023 WL 10449106, at *6 (D.S.C. Nov. 13, 2023). There, the employee saw a physician for initial care, but then provided his employer with no documentation regarding further treatment. *Id.* at *1. Although the employee's own testimony indicated that he experienced pain in performing these activities, *this allegation was insufficient to support his claims* because he "failed to direct the Court to anything in the record regarding any follow-up evaluations with an orthopedist or indicating that a physician ever placed Plaintiff on restrictions." *Id. See also Gallimore v. Newman Machine Co., Inc.*, 301 F.Supp.2d 431, 443 (M.D.N.C. 2004) ("plaintiff's own testimony (deposition and affidavit) as to the alleged limits on his ability to walk, without supporting medical testimony, simply is not sufficient to establish his prima facie case under the ADA."). *Tarokh*, 2023 WL 10449106 at *6. *Tarokh v. Wal-Mart Stores East, LP*, 2:21-cv-02719, 2024 WL 1342743, at *6 (D. S.C. Mar. 29, 2024).

The facts here are remarkably similar to those in *Tarokh*. Just as the employee in *Tarokh* presented his employer with documentation of an initial medical visit and then never produced any evidence of a follow-up visit or treatment, Plaintiff has produced no evidence that he ever saw another medical professional or was ever given any continuing

12

restrictions for his alleged ailment. Plaintiff cannot merely rely on his allegation that his injury has continued for years to overcome his burden to prove that he has an impairment which substantially limits one or more major life activities. (*See* Ex. 4, pp.9-10 (indicating that Plaintiff never saw a follow-up medical professional)). *See Humphreys*, 790 F.3d at 540 ("the nonmoving party must present specific facts showing that there is a genuine issue for trial"). Because Plaintiff has not provided any evidence to support his claim that he has an impairment which substantially limits a major life activity, he has not shown that he is disabled. As such, Plaintiff's claims of disability discrimination and failure to accommodate under the ADA fail as a matter of law.

B. <u>The Board Has Met Its Burden to Prove It Terminated Plaintiff's Employment for a Legitimate, Nondiscriminatory Reason.</u>

Plaintiff's case also fails because the evidence establishes that the Board terminated Plaintiff's employment for a legitimate, nondiscriminatory reason. "Once a plaintiff meets that initial burden, the burden shifts to the defendant to show that its decision was made for a legitimate, nondiscriminatory reason," and if the defendant makes such a showing, "then the presumption of discrimination is rebutted and the burden returns to the plaintiff to prove that the [defendant's] proffered reason was pretext for discrimination." *Neal v. East Carolina University*, 53 F.4th 130, 135 (4th Cir. 2022). "An employer's burden of providing a legitimate, non-discriminatory reason is one of production, not persuasion." *Amos v. Welles*, 477 F.Supp.3d 408, 416 (E.D.N.C. 2020). For example, courts have consistently held that "[p]oor job performance alone constitutes

13

a legitimate, non-discriminatory reason" for discharging an employee. *Id. See also Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 279 (4th Cir. 2000).

Here, the Board has produced ample evidence that Plaintiff was terminated following a history of policy violations, including a final instance of failing to report to work in violation of its attendance policy. (*See* Pitts Decl., Ex. B). In fact, Plaintiff's termination letter stated that "[a]fter numerous warnings and write ups, [Plaintiff has] failed to comply with the following standards: work performance, personal hygiene and attendance." (*Id.* at p.3). Simply put, the Board terminated Plaintiff's employment for reasons entirely unrelated to any alleged disability. Plaintiff has provided no evidence that the Board's legitimate, nondiscriminatory reason for firing is pretextual.

## II. Plaintiff Provided No Evidence to Support His Allegations That He Had a Serious Health Condition Under the FMLA.

Plaintiff has not established that he had a serious health condition—a threshold requirement for an FMLA interference cause of action. *See Pence v. Tenneco Auto. Operating Co.*, 169 Fed.Appx. 808, 813 (4th Cir. 2006) (reiterating that having a serious health condition "is a threshold requirement for entitlement to FMLA leave"). To make out an "interference" claim under the FMLA, an employee must thus demonstrate that (1) he is entitled to an FMLA benefit; (2) his employer interfered with the provision of that benefit; and (3) that interference caused harm. *Adams v. Anne Arundel County Public Schools*, 789 F.3d 422, 427 (4th Cir. 2015). "The core requirements for triggering an employer's obligations [under the FMLA] are a serious health condition and adequate communication, meaning a timely communication sufficient to put an employer on notice

14

that the protections of the Act may apply." *Rodriguez v. Smithfield Packing Co., Inc.*, 545 F.Supp.2d 508, 515-16 (D. Md. 2008). Plaintiff has failed to offer any evidence that he had a serious health condition or that he adequately requested FMLA leave.

Under the FMLA, a qualifying "serious health condition" means "an illness, injury, impairment, or physical or mental condition that involves *continuing treatment by a health care provider*." 29 U.S.C. § 2611(11)(B) (emphasis added). The regulations further define "continuing treatment by a health care provider" as:

> (I) A period of incapacity (i.e., inability to work . . . due to the serious health condition, treatment therefore, or recovery therefrom) of more than three consecutive calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves: (A) Treatment two or more times by a health care provider, . . . ; or (B) Treatment by a health care provider on at least one occasion which results in a regimen of continuing treatment under the supervision of a health care provider.

*Krenzke v. Alexandria Motor Cars, Inc.*, 289 F. App'x 629, 633–34 (4th Cir. 2008). To "establish a violation of the FMLA, it is the plaintiff's burden to prove the existence of an FMLA-qualifying condition." *Covert v. Lane Const. Corp.*, No. 1:11CV1156, 2013 WL 1320510, at *5 (M.D.N.C. Mar. 29, 2013) (internal quotations omitted).

Plaintiff has not met that burden here. Plaintiff has provided no evidence of (1) incapacity for more than three consecutive days or (2) any second contact with a healthcare provider—both of which preclude Plaintiff's claim for FMLA interference as a matter of law.

First, Plaintiff has not produced evidence that he was incapacitated for three consecutive days. *See also Brushwood v. Wachovia Bank, N.A.*, 520 Fed.Appx. 154, 159 (4th Cir. 2013) (affirming summary judgment because plaintiff's injury was not a serious

15

health condition where it did not require her to miss at least "three, full consecutive calendar days"). *See also Reid v. Hospira, Inc.*, 5:09-CV-473, 2010 WL 5173210, at *7 (E.D.N.C. 2010) ("an eligible employee is entitled to FMLA leave for *an illness that incapacitates the employee from working* and for which the employee receives "continuing treatment") (emphasis added). The Note unquestionably excused Plaintiff from work for two days (July 28 and 29) and released him to "return to work on 07/30/2021." (ECF No. 15-1). Nevertheless, Plaintiff chose not to report to work on July 30 and provided no explanation for his unexcused absence. Although the Note also stated that Plaintiff should not engage in prolonged standing for four days, there were numerous tasks Plaintiff could have performed had he returned to work, including but not limited to driving the forklift, riding in the truck between stores and assisting with deliveries, and attending meetings throughout his shift. None of these tasks involve prolonged standing and had Plaintiff reported for work, the Board would have been able to accommodate his need to not engage in prolonged standing.

Moreover, the regulations above provide clear guidelines that a serious health condition requires either treatment two or more times by a healthcare provider or a continuing regimen of treatment. *See Brushwood*, 520 Fed.Appx. at 159 (the "contention that she could simply stay home for three days and then claim she was incapacitated without producing an iota of medical evidence to support that fact is incurably flawed"). *See also Burdette v. Aldi, Inc.*, 1:22CV154, 2023 WL 5886594, at *6 (N.D. W.V. Sept. 11, 2023) (dismissing employee's FMLA claims because she did not receive treatment two or more times within 30 days of the incapacity and did not allege facts to support a regimen

16

of continuing treatment). While the Summary instructed Plaintiff to make an appointment with a primary care provider, there is not "an iota of medical evidence" to indicate Plaintiff ever saw another medical professional for this temporary ailment. *Brushwood*, 520 Fed.Appx. at 159. Without any evidence that Plaintiff met the FMLA's requirements that Plaintiff at least visit a medical professional twice or have a regimen of continuing treatment, Plaintiff has no plausible arguments that he has a serious health condition under the FMLA.

Additionally, Plaintiff's FMLA interference claim fails because *he never requested FMLA leave*. "To qualify for FMLA leave, an employee must notify their employer of their need for leave." *Roberts v. Gestamp West Virginia, LLC*, 45 F. 4th 726, 733 (4th Cir. 2022). Specifically, the Fourth Circuit held in *Brushwood* that what the plaintiff "could not do is ignore the existing medical evidence, refuse to see another medical provider, decide not to work, and expect her employer to conclude that her leave might be covered by the FMLA." 520 Fed.Appx. at 159. Although there are no magic words an employee is expected to use in requesting FMLA leave, an Employer "could not have reasonably been expected to conclude" that an employee "might be suffering from a serious health condition" when he is "unable to work for *fewer* than . . . three consecutive days." *Rodriguez*, 545 F.Supp.2d at 521 (granting summary judgment for the employer).

Here, Plaintiff attempted to engage in conduct which was clearly prohibited by the Fourth Circuit in *Brushwood*. Plaintiff "ignore[d] the existing medical evidence" which released him to return to work on July 30, 2021, "decide[d] not to work" on that day, and "expect[ed his] employer to conclude that [his] leave might be covered by the FMLA.

17

520 Fed.Appx. at 159. When Plaintiff returned to work the following Monday without any restrictions and supplied the Note, it became apparent that the Note only excused Plaintiff from work for *two days and* that it did not provide any basis for Plaintiff failing to report to work on July 30. Under these circumstances, the Board cannot be expected to conclude that Plaintiff would have been entitled to FMLA leave because he was "unable to work for *fewer* than...three consecutive days." *Rodriguez*, 545 F.Supp.2d at 521. Thus, Plaintiff's arguments regarding FMLA interference are without merit.

Because Plaintiff neither provided evidence to prove a serious health condition nor did he provide evidence that he ever asked for FMLA leave, the Court should grant the Motion.

### III. Under Both the FMLA and the ADA, Plaintiff's Claims for Retaliation Fail as a Matter of Law Because Plaintiff Provided No Evidence That He Engaged in Protected Activity.

Plaintiff has neither pled nor provided evidence to support his claim for retaliation under either the FMLA or the ADA. To survive a motion for summary judgment on a retaliation claim under either the FMLA or the ADA, the plaintiff must show "(1) she engaged in a protected activity, (2) the employer acted adversely against her, and (3) there was a causal connection between the protected activity and the asserted adverse action." *Graves v. Bank of America, N.A.*, 54 F. Supp.3d 434, 443 (M.D.N.C. 2014) (granting summary judgment because the plaintiff failed to meet her prima facie case of disability discrimination); *Adams*, 789 F.3d at 429. *See also Lashley v. Spartanburg Methodist College*, 66 F.4th 168, 174 (4th Cir. 2023) (emphasizing that the plaintiff "must first

make a prima facie showing of retaliation—i.e., she engaged in a protected activity and was retaliated against because of it.").

The Board is entitled to judgment as a matter of law on Plaintiff's FMLA retaliation claim because Plaintiff never engaged in any protected activity. "[I]n the context of a retaliation claim, a 'protected activity' may fall into two categories, opposition and participation." *EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 406 (4th Cir. 2005). "Opposition activity includes utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities." *Robbins v. Rowan Vocational Opportunities, Inc.*, 1:16CV310, 2018 WL 2338795, at *7 (M.D.N.C. May 23, 2018) (citing *Cumbie v. Gen'l Shale Brick*, Inc., 302 Fed.Appx. 192, 194 (4th Cir. 2008)) (internal quotations omitted). "Participation activity, on the other hand, includes making a charge, testifying, assisting, or participating in any manner in a Title VII investigation, proceeding, or hearing." *Id. See also Adams*, 789 F.3d at 429 ("Retaliation claims brought under the FMLA are analogous to those brought under Title VII.").

At the summary judgment stage, Plaintiff "cannot rely upon mere speculation or the building of one inference upon another to establish that he was fired in retaliation for taking FMLA leave. *Sharif v. United Airlines, Inc.*, 841 F.3d 199, 204 (4th Cir. 2016)). Instead, Plaintiff must prove he engaged in conduct that either constitutes participation or opposition activity; however, here, Plaintiff has neither pled in the Complaint nor provided any evidence to show that he engaged in any form of protected activity under the FMLA.

19

Regarding the lack of opposition activity, Plaintiff never utilized any informal grievance procedures or staged any informal protests of any allegedly discriminatory practices while employed by the Board. With respect to the lack of participation activity, Plaintiff filed an EEOC charge only *after* the Board terminated his employment. As such, the Plaintiff has not—and cannot—provide evidence to show that he was terminated as a result of any participation activity. Therefore, Plaintiff has not provided any evidence that he engaged in protected activity under the FMLA, and accordingly, his claim for FMLA retaliation fails as a matter of law.

A.  Plaintiff Has Provided No Evidence to Support His Allegations That He Engaged in Any Protected Activity Under the ADA.

The Board is entitled to judgment as a matter of law because Plaintiff also did not engage in protected activity under the ADA. Again, to prove a prima facie case of retaliation under the ADA, a plaintiff must show "(1) she engaged in a protected activity, (2) the employer acted adversely against her, and (3) there was a causal connection between the protected activity and the asserted adverse action." *Graves*, 54 F. Supp.3d at 443. The definition of protected activity under the ADA includes the same participation and opposition activities discussed above for FMLA retaliation claims. *See Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 577 (4th Cir. 2015). Additionally, protected activity under the ADA can include requesting a reasonable accommodation for an alleged disability. *Id.* However, "not every work-related request by a disabled employee constitutes a request for accommodation under the ADA." *Parker v. Children's*

*National Medical Center, Inc.*, 2024 WL 943438, at *24 (D. Md. Mar. 4, 2024). *See also*

*Kelly v. Town of Abingdon, Virginia*, 90 F.4th 158, 166 (4th Cir. 2024).

As described above, Plaintiff has neither engaged in participation nor opposition

conduct. Likewise, Plaintiff never requested an accommodation under the ADA, and thus,

his retaliation claim fails as a matter of law. To qualify as protected activity under the

ADA, "the employee must make an adequate request, thereby putting the employer on

notice" of the employee's request for an accommodation. *Kelly*, 90 F.4th at 166. "[I]t is

axiomatic that for an employer to refuse an accommodation, a request for one must be

made." *Yerby v. City of Richmond, Virginia*, 3:19-CV-394, 2020 WL 1052519, at *4 (E.D.

Va. Mar. 4, 2020) (granting summary judgment because Plaintiff never requested an

accommodation).

Plaintiff here requested nothing. In fact, Plaintiff told his supervisor that the Note

would excuse him from work for three days—when the Note really only allowed Plaintiff

to miss work for two days—and that he could return to work on Monday without

restriction. *See* (Ex. 1 ("I'll be out Thursday and Friday. I went to the doctor today for my

foot…I have a doctors [note] as well")). In fact, Plaintiff's false statement that he had a

Note which would excuse his absence on that Friday prevented the Board from engaging

in an interactive process with Plaintiff regarding any limitations on that day. Thus,

without having ever requested any accommodation, Plaintiff never engaged in any form

of protected activity under the ADA and he has failed to meet his burden of proving

retaliation.

21

B. <u>The Board Has Proven a Legitimate, Non-Retaliatory Reason for Terminating Plaintiff's Employment.</u>

The Board is entitled to summary judgment because it provided evidence of a legitimate, non-retaliatory reason for Plaintiff's termination, and Plaintiff has provided no evidence that the stated reason was pretextual. "If the plaintiff makes a prima facie case of retaliation, the burden shifts to the employer to show that its purportedly retaliatory action was in fact the result of a legitimate non-retaliatory reason." *Thomas v. City of Annapolis, Maryland*, 851 Fed.Appx. 341, 350 (4th Cir. 2021). "The burden then shifts back to the plaintiff to demonstrate that the employer's purported non-retaliatory reasons were pretextual." *Id.* (affirming district court's grant of summary judgment for defendant because Plaintiff failed to prove pretext after defendant provided non-retaliatory reason for plaintiff's discharge). *See also Anderson v. Discovery Communications, LLC*, 517 Fed.Appx. 190, 197 (4th Cir. 2013) ("FMLA retaliation claim thus fails for the same reason her ADA retaliation claim failed: the absence of evidence indicating that Discovery's legitimate, nondiscriminatory reason for terminating Anderson was pretext for unlawful behavior.").

Here, the Board terminated Plaintiff's employment after it discovered that Plaintiff failed to report to work on a day in which he was undoubtedly required to report. (ECF No. 15-1 ("Pt may return to work on 07/30/2021.")). Plaintiff's failure to report to work is a violation of the Board's attendance policy, and in conjunction with his history of company policy violations, the Board made the decision to terminate Plaintiff's employment. (Pitts Decl., Ex. B, p.3 ("After numerous warnings and write ups, you have

22

failed to comply with the following standards: work performance, personal hygiene and attendance.")). There is no evidence that contradicts the Board's stated reasons. The uncontroverted facts show that Plaintiff had a long history of documented performance issues and that he had been warned that any additional violations could result in termination of his employment. Thus, when he failed to report to work, misrepresented that he had a note excusing him from work on July 30th when he did not, the Board terminated his employment. There is no evidence that this decision was related to any alleged disability or serious health condition. Therefore, the Board has provided ample evidence to prove it fired Plaintiff for a legitimate, non-retaliatory reason. *See Amos*, 477 F.Supp.3d at 416 ("Poor job performance alone constitutes a legitimate, non-discriminatory reason" for discharging an employee). Because Plaintiff has provided no evidence to prove any pretext for retaliation, there are no genuine disputes of material fact and the Board is entitled to judgment as a matter of law.

## CONCLUSION

For the reasons stated herein, the Court should grant the Board's Motion.

This the 2nd day of May, 2024.

*/s/ Daniel D. Stratton*
Denis E. Jacobson
NC State Bar No. 13559
Email: djacobson@tuggleduggins.com
Daniel D. Stratton
NC State Bar No. 52416
Email: dstratton@tuggleduggins.com
Claire E. Thompson
NC State Bar No. 61140
Email: cthompson@tuggleduggins.com

*Attorneys for Defendant*

23

OF COUNSEL:

TUGGLE DUGGINS P.A.
P.O. Box 2888
Greensboro, NC 27402
Telephone: (336) 378-1431
Facsimile: (336)274-6590

## <u>CERTIFICATE OF WORD COUNT</u>

The undersigned hereby certifies that the foregoing document complies with the type volume limitations of L.R. 7.3(d)(1) and contains 6,229 words, not including those portions exempted by the rule.

This the 2nd day of May, 2024.

*/s/ Daniel D. Stratton*
 Daniel D. Stratton
 NC State Bar No. 52416

 *Attorney for Defendant*

OF COUNSEL:

TUGGLE DUGGINS P.A.
P.O. Box 2888
Greensboro, NC 27402
Telephone: (336) 378-1431
Facsimile: (336)274-6590

25

<u>**CERTIFICATE OF SERVICE**</u>

This is to certify that the undersigned has this date served the foregoing **Brief in Support of Defendant's Motion for Summary Judgment** in the above-entitled action upon all other parties to this cause through the Court's CM/ECF system as follows:

> Wilson F. Fong
> HENSEL LAW, PLLC
> P.O. Box 39270
> Greensboro, NC 27438
> will.fong@hensellaw.com
>
> *Attorney for Plaintiff*

This the 2nd day of May, 2024.

> */s/ Daniel D. Stratton*
> Daniel D. Stratton
> NC State Bar No. 52416
>
> *Attorney for Defendant*

OF COUNSEL:

TUGGLE DUGGINS P.A.
P.O. Box 2888
Greensboro, NC 27402
Telephone: (336) 378-1431
Facsimile: (336)274-6590