IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| **CURTIS ROGERS,** <br><br><br> *Plaintiff*, <br><br> **v.** <br><br> **CITY OF GREENSBORO ABC BOARD,** <br><br><br> *Defendant*. | **CASE NO.: 1:23-CV-621** |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**NOW COMES** the Plaintiff, Curtis Rogers ("Rogers") and opposes Defendant's

Motion for Summary Judgment

### STATEMENT OF THE CASE

Plaintiff filed the Complaint in this action on July 27, 2023, alleging five causes of

action arising from his termination by Defendant: (1) disability discrimination under the

Americans with Disabilities Act ("ADA"), (2) failure to accommodate under the ADA,

(3) retaliation under the ADA, (4) interference with rights under the Family and Medical

Leave Act ("FMLA"), and (5) retaliation under the FMLA. (Doc. 1).

-1-

Defendant answered on August 23, 2023. (Doc. 6). This Court entered a scheduling order, and discovery commenced on October 23, 2023. (Doc. 12).

Defendant moved for judgment on the pleadings on February 23, 2024. (Doc. 15). The Court denied Defendant's motion on April 15, 2024. (Doc. 25).

## STATEMENT OF THE FACTS

Rogers began working for Defendant as a warehouse worker in 2013. (Doc. 1 ¶ 8; Doc. 6 ¶ 8). As of July 2021, Rogers had worked for Defendant for at least 12 months, worked at least 1,250 hours in the previous 12 months, and worked at a location where there were 50 or more employees within a 75-mile radius. (Doc. 1 ¶ 22; Doc. 6 ¶ 22).

Rogers's job consisted mostly of lifting, stacking, organizing, loading, and unloading boxes of alcoholic beverages. (Ex. 1). Defendant lists the ability to "walk and stand on a recurring and regular basis" and the "physical endurance to work eight (8) hour shifts or more as required" as physical requirements of the job. *Id.*

On July 28, 2021, Rogers was diagnosed with plantar fasciitis. (Rogers Aff. ¶ 4, Ex. A). This condition makes it difficult for Rogers to walk and stand. (Rogers Aff. ¶ 5). At times, he is not able to put any pressure on his foot, which completely prevents him from standing and walking. *Id.* It was one of these occasions where he was unable to walk or stand that caused him to seek treatment from an urgent care facility on July 28. *Id.* Rogers's doctor told him he could have no prolonged standing for the next four days. (Rogers Aff. Ex. A).

When Rogers received his diagnosis, he texted his supervisor, Jasen Milliken ("Milliken"), "Hey, just wanted to let you know I'll be out Thursday and Friday. I went to the doctor today for my foot and I have plantar fasciitis in my right foot. I have a doctors [sic] as well." (Doc. 28-1). Milliken told Rogers to call him. *Id.* Rogers did call Milliken and told him that he could not put weight on his foot for four days and would bring him a note the following Monday. (Rogers Aff. ¶ 8).

When Rogers returned to work on Monday, August 2, 2021, his pain had subsided, but he still walked with a noticeable limp. (Rogers Aff. ¶ 9). He provided Milliken with a doctor's note and after visit summary. (Rogers Aff. ¶ 10, Ex. A). The doctor's note said Rogers "May return to work on 7/30/2021," but also said he was to have "no prolonged standing for the next 4 days [following July 28, 2021]." (Rogers Aff. Ex. A). The after visit summary said Rogers should "follow up in about 1 week." *Id.*

Milliken asked Rogers why he did not come to work on July 30, to which Rogers replied that he could not put any weight on his foot, so he could not do any of his job duties, which all involved standing and walking. (Rogers Aff. ¶¶ 11-12; Ex. 1). Milliken told Rogers that if he could not make truck days, Milliken did not need Rogers. (Rogers Aff. ¶ 13). Milliken also said he would talk to Vickee Armstrong ("Armstrong"), Defendant's CEO. *Id.*

Three days later, on August 5, 2021, Milliken and Armstrong terminated Rogers. (Rogers Aff. 14; Doc. 28-4 p. 4). They handed him a paper that said, "After numerous

warnings and write ups, you have failed to comply with the following standards: work performance, personal hygiene and attendance." (Doc. 28-4 p. 4). They did not elaborate on what Rogers did to violate these standards. (Rogers Aff. ¶ 14).

Rogers had received a performance raise in July, shortly before his termination. (Doc. 1 ¶ 20; Doc. 6 ¶ 20). His employment record does not reflect any write-ups for performance issues, and only one "constructive advice record" for performance dated a year and a half before Rogers's termination. (Doc. 28-4). His employment record further contains no evidence of any hygiene or attendance issues. *Id.*

After his termination, Rogers did not attend the follow up appointment because Defendant cancelled his insurance. (Rogers Aff. ¶ 17). His plantar fasciitis continued to substantially limit his ability to stand, walk, and work. (Rogers Aff. ¶¶ 17-18). This drove him to seek increasingly sedentary work. (Doc. 28-7 pp. 8-9; Rogers Aff. ¶ 18). He began working as a delivery driver, but found his plantar fasciitis kept him from being able to perform the functions of a touch freight job[1]. *Id.* Rogers eventually had to find completely sedentary work. *Id.* He is now unable to work any delivery, freight, or warehouse jobs. (Rogers Aff ¶ 18). If he stands or walks for prolonged periods, the following day he will be

---

[1] "Touch freight" refers to a freight job where the driver has to load and unload (i.e. "touch") the cargo, as opposed to "no-touch freight" where the loading and unloading is handled by someone else, usually workers at the shipping or receiving facility.

completely unable to walk or stand. *Id.* His plantar fasciitis has also been confirmed by a specialist as the source of his persistent foot pain. (Ex. 2).

## ARGUMENT

Summary judgment is only appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In considering a motion for summary judgment, the court is required to view the facts and draw reasonable inferences in a light most favorable to the nonmoving party. Id. at 255. The plaintiff is entitled to have the credibility of all his evidence presumed. *Miller v. Leathers*, 913 F.2d 1085, 1087 (4th Cir. 1990), cert. denied, 498 U.S. 1109 (1991). The moving party has the burden to show absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Plaintiff's testimony can be sufficient to create a genuine issue of material fact in summary judgment motions. *See Williams v. Giant Food Inc.*, 370 F.3d 423, 432 (4th Cir. 2004); *see also Nigro v. Sears, Roebuck & Co.*, 784 F.3d 495, 498 (9th Cir. 2015).

Defendant's primary argument is that Rogers's plantar fasciitis did not constitute a disability under the ADA or a serious health condition under the FMLA. While Rogers's plantar fasciitis was and remains a disability and a serious health condition, the fact that

Defendant terminated Rogers within a week of his request for time off to care for this condition shows that Defendant clearly regarded him as disabled and acted with discriminatory and retaliatory intent. Additionally, Defendant's proffered nondiscriminatory reason for terminating Rogers is not supported by its own employment records, as Rogers had no prior issues with attendance or hygiene, (*see generally* Doc. 28-4), and had received a performance raise the month before he was terminated. (Doc. 1 ¶ 20; Doc. 6 ¶ 20). Defendant's motion for summary judgment should be denied.

## I. Defendant Violated the ADA When It Terminated Rogers a Week After He Disclosed His Plantar Fasciitis.

The ADA makes it unlawful for covered employers to "discriminate against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). To establish a prima facie case of disability discrimination, a Plaintiff must show "(1) she was a qualified individual with a disability; (2) she was discharged; (3) she was fulfilling her employer's legitimate expectations at the time of discharge; and (4) the circumstances of her discharge raise a reasonable inference of unlawful discrimination." Reynolds v. American Nat. Red Cross, 701 F.3d 143, 150 (4th Cir. 2012).

It is undisputed that Rogers was discharged. Defendant also does not argue separately from its proffered legitimate nondiscriminatory reason defense that Rogers was not fulfilling its legitimate expectations at the time of his discharge. In fact, it could not

make this argument, as it admitted in its answer that it gave Rogers a merit raise only a few weeks before it fired him. (Doc. 1 ¶ 20; Doc. 6 ¶ 20).

Defendant only argues that Rogers was not disabled, and that his disability was not the reason for his termination. He was disabled. However, regardless of whether his plantar fasciitis constitutes a disability, Defendant clearly believed it to be, and intended to discriminate against him because of it, because they terminated him immediately after he disclosed his diagnosis.

A. *Rogers's Plantar Fasciitis is a Disability Because It Substantially Limits His Ability to Walk, Stand, and Work.*

Under the ADA, a disability is defined as "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(A). "Major life activities" include things like "walking", "standing", and "working". *Id.* at § 12102(2).

Establishing a disability is not meant to be onerous, and "[t]he primary object of attention in cases brought under the ADA should be whether covered entities have complied with their obligations and whether discrimination has occurred, not whether the individual meets the definition of disability." 29 C.F.R. § 1630.1. After the 2008 amendments to the ADA, establishing that a physical or mental impairment is "substantially limiting" is a low bar. *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 573-74 (4th Cir. 2015). "An impairment need not prevent, or significantly or severely

-7-

restrict, the individual from performing a major life activity in order to be considered substantially limiting." *Id.* (citing 29 C.F.R. § 1630.2(j)(1)).

Rogers was diagnosed with plantar fasciitis on July 28, 2021. (Rogers Aff. ¶ 4, Ex. A). While Rogers admittedly did not follow up with his doctor after he was terminated and lost his insurance, his plantar fasciitis continued to substantially limit his ability to stand, walk, and work. (Rogers Aff. ¶¶ 17-18). As Rogers explained in his verified discovery responses, these limitations drove him to seek more sedentary work. (Doc. 28-7 pp. 8-9; Rogers Aff. ¶ 18). After his employment with Defendant Rogers worked as a delivery truck driver. (Doc. 28-7 pp. 8-9). In April 2022, he had to leave his job with Golden State Foods Corp. because his plantar fasciitis prevented him from keeping up with the physical requirements of a touch freight job. *Id.* The job at Murrows Transfer that Rogers left for was advertised to him as requiring less walking, but it turned out to be touch freight, as well, requiring Rogers to seek a completely sedentary job as a logistics account executive. *Id.* That is, Rogers's ability to work was so substantially limited that he had to completely change careers from warehouse worker to delivery driver to office worker.

Further, "The comparison of an individual's performance of a major life activity to the performance of the same major life activity by most people in the general population usually will not require scientific, medical, or statistical analysis." 29 C.F.R. § 1630.2(j)(v). Medical records have never been necessary to establish a disability discrimination claim, and the more obvious the impairment to a lay jury, the less necessary it is. *See Marinelli v.*

-8-

*City of Erie, Pa.* 216 F.3d 354, 360 (3d Cir. 2000); *Katz v. City Metal Co.*, 87 F.3d 26(1st

Cir. 1996). So, Rogers's lack of medical records following up on his initial diagnosis does

not mean he was not disabled. The evidence shows that his performance of the major life

activities of standing, walking, and working were substantially limited in comparison to

most people in the general population. (Doc. 28-7 pp. 8-9). Regardless, Rogers was

recently evaluated by a specialist who confirmed that the source of his persistent foot pain

is plantar fasciitis. (Ex. 2).

Because Rogers was disabled, Defendant's motion for summary judgment should

be denied.

B. *Even If Rogers's Plantar Fasciitis Is Not a Disability Under the ADA, Defendant Regarded Him as Disabled and Intended to Discriminate Against Him When It Terminated Him a Week After His Diagnosis.*

In addition to protecting those without disabilities, the ADA protects those whom

an employer regards as being disabled. 42 U.S.C. § 12102(1).

Whether the employer regarded an employee as disabled is arguably more

important than whether an employee was disabled, because the employer's knowledge is

necessary to establish causation. *See Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 123-26

(4th Cir. 2021) (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d

653, 657 (4th Cir. 1998) ("[A]n employer cannot take action because of a factor of which it

is unaware . . . .")). That is, if an employer is unaware that an employee is disabled, it does

not matter if the employee proves they have a disability because he cannot prove

causation; on the other hand, if an employer believes an employee has a disability, it does not matter whether the employee is actually disabled because, even if the employer is mistaken in its belief, its discriminatory motive renders it liable. *See Haulbrook v. Michelin North America*, 252 F.3d 696, 703 (4th Cir. 2001); *Mercado v. Puerto Rico*, 814 F.3d 581, 588 (1st Cir. 2016).

As the Court recognized in its Order denying Defendant's motion for judgment on the pleadings, the allegations of the complaint supported the inference that Defendant regarded Rogers as having an impairment constituting a disability under the ADA. (Doc. 25 p. 4). Those allegations are now facts: After Rogers told his supervisor, Milliken, about his diagnosis and requested leave, Milliken told Rogers he did not need Rogers if he missed truck days. (Rogers Aff. ¶ 13). When Rogers returned from his leave, he gave Milliken a note, and Milliken told Rogers he would talk to Defendant's CEO. (Rogers Aff. 13). Defendant then terminated Rogers three days later, within a week of disclosing his diagnosis. (Rogers Aff. ¶14, Ex. A.; Doc. 6 ¶ 17; Doc. 28-1; Doc. 28-4 p. 4).

Defendant's only argument that it did not regard Rogers as disabled is that it "specifically demonstrated its desire for Plaintiff to return to work the day the Note cleared him to do so." Defendant does not support this statement with any citation to the record or explain what it means by this.

Nor does Defendant make a "transitory and minor" argument under 29 U.S.C. § 12102(3)(B). *See Miller v. Md. Dept. of Natural Res.*, 813 Fed. Appx. 869, 876-877 (4th Cir.

2020). As an affirmative defense, it is Defendant's burden to make this argument. *See Miller*, 813 Fed. Appx. 877. While Defendant argues elsewhere in its brief that Rogers's plantar fasciitis was in fact minor, this does not mean that Defendant did not regard it as being more than minor when it terminated him in 2021. The closeness in time between when Rogers disclosed his condition and when Defendant terminated him supports the inference that Defendant regarded him as disabled. *see Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 126-127 (4th Cir. 2021) (Discussing how close temporal proximity is evidence of causality).

Because Defendant viewed Rogers's plantar fasciitis as a disability and terminated him because of it, Defendant's motion for summary judgment should be denied.

### C. *Defendant Failed to Accommodate Rogers's Request for Leave as an Accommodation.*

The ADA requires employers to reasonably accommodate individuals with disabilities. *Wilson v. Dollar General Corp.*, 717 F.3d 337, 344 (4th Cir. 2013) (citing 42 U.S.C. § 12112(b)(5)(A)). An employee establishes a claim for failure to accommodate by showing "(i) she was disabled, (ii) the employer had notice of her disability, (iii) she could perform the essential functions of her position with a reasonable accommodation, and (iv) the employer refused to make such accommodation." *Cowgill v. First Data Technologies, Inc.*, 41 F.4th 370, 378 (4th Cir. 2022) (citing *Wilson*, 717 F.3d at 345). An employer can only deny a reasonable accommodation if it "'can demonstrate that the accommodation

would impose an undue hardship' on its business." *Cowgill*, 41 F.4th at 378 (citing 42 U.S.C. § 12112(b)(5)(A)).

When the requested accommodation is leave, "a leave request will not be unreasonable on its face so long as it (1) is for a limited, finite period of time; (2) consists of accrued paid leave or unpaid leave; and (3) is shown to be likely to achieve a level of success that will enable the individual to perform the essential functions of the job in question." *Wilson*, 717 F.3d at 345 n.7.

As discussed above, Rogers was disabled, and Defendant had notice of his disability. With the reasonable accommodation of four days off, two of which were not working days, Rogers could perform the essential functions of his job. (Rogers Aff. ¶ 4, Ex. A). Those four days were for a limited, finite period of time, would have been covered by FMLA (*see infra*), and enabled Rogers to return to work on August 2, 2021. (Rogers Aff. ¶¶ 7-12). Defendant then refused to grant that accommodation and terminated Rogers. (Rogers Aff. ¶14, Ex. A.; Doc. 6 ¶ 17; Doc. 28-1; Doc. 28-4 p. 4).

Defendant argues that because Rogers's doctor's note cleared him to return to work on July 30, he should have come to work. This is merely a post hoc rationale for Defendant's intentional discrimination.

In the first place, Defendant has not offered a scintilla of evidence connecting that single day of absence to Rogers's termination. There is no record or testimony from Defendant connecting Rogers's absence on July 30 to his termination. The only evidence

of any connection is Rogers's testimony about Milliken asking him why he did not come in on July 30. (Rogers Aff. ¶ 11; 28-7 pp. 3-5). To which Rogers explained, as he did when he initially called out on July 28, that he could not stand for those four days, so he could not do any of his job duties. (Rogers Aff. ¶¶ 5-6, 8, 12, Ex. A; 28-7 pp. 3-5).

Additionally, in its Order on Defendant's motion for judgment on the pleadings, the Court rejected the same argument Defendant now makes and recognized that the note's instruction of "No prolonged standing for the next 4 days" meant that he was incapacitated from his usual work as a warehouse worker. (Doc. 25 pp 6-7; Rogers Aff. ¶ 4, Ex. A).

To overcome this issue, Defendant now argues that Rogers could have done other duties on the July 30 like "driving the forklift, riding in the truck between stores, and various meetings through the shift." (Doc. 28-6 ¶ 5). First, these alternative duties are offered via the testimony of an employee who did not work for Defendant at the same time as Rogers, or if she did, she did not work with Rogers. (Doc. 28-6; Rogers Aff. ¶ 15). Her testimony therefore has no relevance to Rogers's actual job in July and August of 2021. Second, this list of duties does not make up a realistic workday. The forklift was only operated for a few minutes at a time between loading and unloading, and riding in the truck involved loading and unloading, so Rogers would not have been able to do either. (Rogers Aff. ¶ 16). Milliken also did not permit Rogers to use the forklift. *Id.* Seated meetings were also not a regular part of the workday. *Id.*

Rogers's request for accommodation of four days of leave during which he was unable to stand or walk, was reasonable, and Defendant's claim that he should have come in one of those four days is unsupported by the evidence. Defendant's motion for summary judgment should be denied.

## II. Rogers Was Entitled to FMLA Leave to Care for His Plantar Fasciitis, but Defendant Interfered with that Right by Terminating Him.

To make a claim for interference under the FMLA, an employee must demonstrate "(1) he is entitled to an FMLA benefit; (2) his employer interfered with the provision of that benefit; and (3) that interference caused harm." *Adams v. Anne Arundel Cnty. Pub. Schs.*, 789 F.3d 422, 427 (4th Cir. 2015).

Defendant argues that Rogers was not entitled to FMLA leave because his Plantar Fasciitis was not a "serious health condition" under the FMLA.[2] "The term 'serious health condition' means an illness, injury, impairment, or physical or mental condition that involves—(A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11). "Continuing treatment by a health care provider" includes a broad range of conditions listed in 29 C.F.R. § 825.115. Relevant here are:

> (a) Incapacity and treatment. A period of incapacity of more than three consecutive, full calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves:

---

[2] Defendant admits that Rogers meets the FMLA's eligibility requirements for duration of employment and employer size. (Doc. 1 ¶ 22; Doc. 6 ¶ 22).

(1) Treatment two or more times, within 30 days of the first day of incapacity, unless extenuating circumstances exist, by a health care provider, by a nurse under direct supervision of a health care provider, or by a provider of health care services (e.g., physical therapist) under orders of, or on referral by, a health care provider; or

(2) Treatment by a health care provider on at least one occasion, which results in a regimen of continuing treatment under the supervision of the health care provider.

. . .

(c) Chronic conditions. Any period of incapacity or treatment for such incapacity due to a chronic serious health condition. A chronic serious health condition is one which:

(1) Requires periodic visits (defined as at least twice a year) for treatment by a health care provider, or by a nurse under direct supervision of a health care provider;

(2) Continues over an extended period of time (including recurring episodes of a single underlying condition); and

(3) May cause episodic rather than a continuing period of incapacity (e.g., asthma, diabetes, epilepsy, etc.).

. . .

(f) Absences attributable to incapacity under paragraph (b) or (c) of this section qualify for FMLA leave even though the employee or the covered family member does not receive treatment from a health care provider during the absence, and even if the absence does not last more than three consecutive, full calendar days.

29 C.F.R. § 825.115.

As it did in its motion for judgement on the pleadings and relying on the same note, Defendant once again claims incorrectly that Rogers was not incapacitated for three consecutive days. (Doc. 15-1). As the Court said in rejecting that argument, "the same medical provider's note also states that Mr. Rogers should have '[n]o prolonged standing for the next 4 days,' Doc. 15-1, and the provider's permission to return to work in two days does not necessarily mean Mr. Rogers was physically able to resume his usual duties as a warehouse worker." (Doc. 25 p. 7). Rogers was, in fact, incapacitated for four days, unable to put weight on his foot to stand, walk, or do any of his job duties. (Rogers Aff. ¶¶ 5-12; Ex. A). Defendant's post hoc list of non-standing tasks from an employee that did not work with Rogers does nothing to change this.

Defendant also once again tries to argue that Rogers did not request FMLA leave. The Court rejected that argument before:

> The Board again ignores the applicable caselaw, which is clear that magic words are not required; all a defendant must do is notify the employer of the need for leave. *See Roberts v. Gestamp W. Va., LLC*, 45 F.4th 726, 733 (4th Cir. 2022). Here, Mr. Rogers alleges that he told his supervisor about the plantar fasciitis diagnosis and asked for leave. Doc. 1 at ¶ 12. That allegation allows an inference that Mr. Rogers requested FMLA leave. If the Board supervisor did not understand that the request was for FMLA leave, it was his duty to clarify.

-16-

(Doc. 25 pp. 7-8). The evidence is still that Rogers told his supervisor about the plantar fasciitis diagnosis and asked for leave. (Doc. 28-1; Rogers Aff. ¶¶ 7-8). Rogers therefore did request FMLA.

What Rogers does lack is a second treatment within 30 days, continuous treatment, or periodic treatment. However, the facts of this case present extenuating circumstances where using the lack of treatment against Rogers would perversely reward Defendant for its illegal behavior.

Here, defendant terminated Rogers only seven days after his first doctor's visit for plantar fasciitis. (Rogers Aff. 4-5, 14, Ex. A; Doc. 28-4 p. 4). At the time, Rogers was supposed to follow up in "about 1 week", and Defendant knew this because Rogers gave Defendant the after visit summary with that instruction. (Rogers Aff. ¶ 10, Ex. A). Before he could have that second doctor's visit, Defendant terminated him because of his leave, as proved by the close temporal proximity and Milliken's comment that if Rogers could not make truck days, he did not need him. (Rogers Aff. ¶ 13). So, as far as Defendant knew at the time of Rogers's termination, he was going to have the second visit and was going to be FMLA eligible.

Additionally, in terminating Rogers, Defendant canceled his insurance, cutting off Rogers's ability to obtain any further medical treatment. (Rogers Aff. ¶ 17). It is Defendant's fault that Rogers did not engage in continuous or periodic treatment or get his second visit within 30 days. It would be unjust to now allow Defendant to escape

liability because Rogers did not receive the second visit when Defendant's intentional interference with Rogers's FMLA rights is what prevented him from getting that visit.

Because Rogers was entitled to FMLA leave and Defendant interfered with that leave by terminating him immediately after his initial leave, Defendant violated the FMLA and its motion for summary judgment should be denied.

## III. Defendant Retaliated Against Rogers for Requesting Leave Under the ADA and FMLA to Care for His Plantar Fasciitis.

The elements of a retaliation claim under the ADA and the FMLA are the same: 1) the plaintiff engaged in a protected activity; 2) his employer took an adverse employment action against him; and 3) there was a causal link between the two events. (Doc. 25 pp. 5-6, 8 (citing *Jacobs,* 780 F.3d at 577 (ADA); *Vannoy v. Fed. Rsrv. Bank of Richmond*, 827 F.3d 296, 304 (4th Cir. 2016) (FMLA)). A plaintiff need not show that he was disabled under the ADA or that he had an FMLA-qualifying serious health condition to state a claim for retaliation under the ADA or the FMLA. *Id.*

Requests for leave are protected activities under the ADA and FMLA. *See Jacobs*, 780 F.3d at 577; *Fry v. Rand Const. Corp.*, 964 F.3d 239, 245 (4th Cir. 2020). Magic words are not required to request leave under the FMLA, all a plaintiff must do is notify the employer of the need for leave. (Doc. 25 p. 7-8 (citing *Roberts v. Gestamp W. Va., LLC*, 45 F.4th 726, 733 (4th Cir. 2022)). Exercise of substantive rights under the FMLA (i.e. taking leave), are also protected activities. *Fry*, 964 F.3d at 245.

-18-

Causation in retaliation claims can be established though close temporal proximity. *See Roberts*, 998 F.3d at 123.

When Rogers texted his supervisor on July 28, 2021, "I'll be out Thursday and Friday. I went to the doctor today for my foot and I have plantar fasciitis in my right foot. I have a doctors [sic] note as well", this provided Defendant with clear notice that Rogers was requesting leave for a health reason. (Doc. 28-1). That is a protected activity under both the ADA and the FMLA. Rogers also engaged in a protected activity when he did in fact take leave on July 29 and 30.

Defendant then fired Rogers on August 5, 2021. (Doc. 1 ¶ 20; Doc. 6 ¶ 20; Doc. 28-4 p. 4). His termination came seven days after he first requested leave and three days after he returned from leave, which is very close temporal proximity and strong evidence of causation. (Doc. 1 ¶ 20; Doc. 6 ¶ 20). Milliken's comment that if Rogers could not make truck days, he did not need him also supports the inference that Rogers's leave was the cause of his termination. (Rogers Aff. ¶ 13).

Because Defendant terminated Rogers because of his request for and use of leave, it violated the ADA and FMLA, and Defendant's motion for summary judgment should be denied.

**IV.** **Defendant's Proffered Legitimate Nondiscriminatory Reason for Terminating Rogers, Work Performance, Personal Hygiene, and Attendance, Are Pretexts for Discrimination Because Rogers Received a Performance Raise Shortly Before He Was Terminated and Has No History of Hygiene or Attendance Issues.**

Discrimination and retaliation claims under the ADA and FMLA are evaluated under the *McDonnell Douglas Corp v. Green*, 411 U.S. 792 (1973), burden-shifting framework. *See Thomas v. city of Annapolis Maryland*, 851 Fed. Appx. 341, 345 (4th Cir. 2021). Under the *McDonnell Douglas* framework, a plaintiff must first establish a prima facie case of discrimination, then the defendant must proffer a legitimate nondiscriminatory reason for the adverse employment action. *Id. See also St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-11 (1993). The legitimate nondiscriminatory reason stage is a "determination that a defendant has met its burden of production" which "can involve no credibility assessment." Id. at 509. If the defendant succeeds in producing evidence of a legitimate nondiscriminatory reason, the trier of fact proceeds to decide whether plaintiff has proven the reason a pretext, which is a credibility assessment. *See Hicks,* 509 U.S. at 510-11.

Defendant claims that it terminated Rogers for the legitimate nondiscriminatory reasons of "work performance, personal hygiene, and attendance." (Doc. 28-4 p. 4). These are pretexts not supported by any evidence.

First, Defendant has not provided any records or testimony from any of the individuals responsible for terminating Rogers or drafting his termination letter to explain

what, exactly, is meant by the vague phrases "work performance, personal hygiene, and attendance." (Doc. 28-4 p. 4). What evidence Defendant did provide shows that Rogers had no issues with any of those things.

With regards to Plaintiff's work performance, Rogers did receive a "constructive advice record" telling him to work faster on January 9, 2020, (Doc. 28-4 p. 8), but this seems to have been resolved by July 2021 when Defendant admitted in its Answer that it gave Rogers a performance raise only weeks before he was terminated. (Doc. 6 ¶ 20). This undercuts any claim that Rogers's performance was unsatisfactory.

In addition, on none of the write-ups Defendant provides from the entirety of Rogers's employment is the box for "Substandard Work" checked. (*See* Doc. 28-4). His most recent two write ups were on March 16, 2021, (Doc. 28-4 p. 7), and December 24, 2020. (Doc. 28-4 p. 5). The March 16, 2021, write up was for:

> 3-4-21 Curtis was sent back home to address a clothing issue based on company standards (Sagging). 3-5-21 Curtis called out due to death in his family.
> 3-16-21 Curtis failed to follow company policy while out on delivery. (Left paperwork at Whse and failed to call for it to be faxed.
> When questioned he stated that his phone was dead. Store available
> 3-18-21 Curtis texted a message that another family had passed away and said that he would be at work.

(Doc. 28-4 p. 7). Sagging pants, a single instance of forgotten paperwork, and two deaths in the family are not issues with "work performance." The December 24, 2020, write up

-21-

was for an isolated safety incident, which again is not "work performance." (Doc. 28-4 p. 5).

With regards to personal hygiene, none of the write-ups Defendant presents says anything about hygiene issues. (Doc. 28-4). Defendant provides no evidence, or even speculation, as to what Defendant meant by "hygiene" when it wrote it, (Doc. 28-4 p. 4), and without any evidence that hygiene was an issue before Rogers asked for time off for his plantar fasciitis, there is no evidence that hygiene was anything more than a pretext for discrimination.

Similarly, none of Rogers's write-ups refer to any attendance issues. (Doc. 28-4). The box for "Excessive Absence" was never checked on any write-ups, and attendance is never mentioned. *Id.* This, too, is simply a pretext for discrimination.

With no witness testimony or records to explain what "work performance, personal hygiene, and attendance" violations Rogers committed or why they warranted termination, and no evidence to show that Rogers had any prior issues with any of these things, Defendant has failed to meet its burden of production of providing a legitimate nondiscriminatory reason. Even if it did, Defendant's proffered reason is an obvious pretext when the strong evidence of causation between Rogers's plantar fasciitis diagnosis and leave and his termination is compared to the factual void surrounding his termination letter. Defendant's motion for summary judgment should be denied.

# CONCLUSION

Defenant terminated Rogers because he disclosed his plantar fasciitis diagnosis and asked for time off to care for it. Defendant has provided no evidence to support its alternative reason. Defendant's motion for summary judgment should therefore be denied.

*Respectfully submitted on this, the 31st day of May 2024,*

/s/ WILSON FONG
*Attorney for the Plaintiff*
NC State Bar No. 50708
HENSEL LAW, PLLC
Post Office Box 39270
Greensboro, North Carolina 27438
Phone: (336) 218-6466
Fax: (336) 218-6467
will.fong@hensellaw.com

## CERTIFICATE OF WORD COUNT

I hereby certify that the word count of this Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment, including the body, headings, and footnotes, is 5,587 words, as measured by the word count feature of the word processing software used in drafting the document.

*Respectfully submitted on this, the 31st day of May 2024,*

/s/ WILSON FONG
*Attorney for the Plaintiff*
NC State Bar No. 50708
HENSEL LAW, PLLC
Post Office Box 39270
Greensboro, North Carolina 27438
Phone: (336) 218-6466
Fax: (336) 218-6467
will.fong@hensellaw.com

-24-

# CERTIFICATE OF SERVICE

I hereby certify that on May 31, 2024, I electronically filed the foregoing Plaintiff's

Response in Opposition to Defendant's Motion for Summary Judgment with the Clerk of

Court using the CM/ECF system, which will send notification of filing to the following:

> Denis E. Jacobson
> djacobson@tuggleduggins.com
> Daniel D. Stratton
> dstratton@tuggleduggins.com
> TUGGLE DUGGINS P.A.
> P.O. Box 2888
> Greensboro, NC 27402
> *Counsel for the Defendant*

> **/s/ WILSON FONG**
> *Attorney for the Plaintiff*
> NC State Bar No. 50708
> HENSEL LAW, PLLC
> Post Office Box 39270
> Greensboro, North Carolina 27438
> Phone: (336) 218-6466
> Fax: (336) 218-6467
> will.fong@hensellaw.com