IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| CURTIS ROGERS, | |
|---|---|
| Plaintiff, | |
| v. | Civil Action No. 1:23-cv-621 |
| CITY OF GREENSBORO ABC BOARD, | |
| Defendant. | |

## REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Defendant Greensboro ABC Board (the "Board"), by and through counsel, submits this Reply Brief in Support of its Summary Judgment Motion (the "Motion") (ECF No. 28). In his opposition, Plaintiff misapprehends the law, misrepresents facts, and attempts to create new evidence in an effort to overcome the fatal defects in his case. Despite Plaintiff's efforts to create issues of fact, the evidence in this case shows that Plaintiff's claims lack support in the law and thus the Motion should be granted.

## ARGUMENT

In his repeated reliance on the Court's Order on the Board's Motion for Judgment on the Pleadings (ECF 25), Plaintiff ignores the heightened burden of production in the context of a summary judgment motion. *Boone v. Board of Governors of Univ. of North Carolina*, 395 F.Supp.3d 657, 665-666 (M.D.N.C. 2019) (quoting *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993)) ("The judicial inquiry on summary judgment thus scrutinizes the plaintiff's case to determine whether the plaintiff has proffered sufficient proof, in the form of admissible evidence, that could carry the burden of proof

of his claim at trial."). Courts routinely grant motions for summary judgment where they previously denied a motion for judgment on the pleadings on the same claims. *See, e.g.*, *City-Wide Asphalt Paving, Inc. v. Alamance County*, 966 F.Supp. 395, 397 (M.D.N.C. 1997); *Belcher v. W.C. English Inc.*, 125 F.Supp.3d 544, 551 (M.D.N.C. 2015) ("a summary judgment determination would allow for a decision on the merits, unlike a motion for judgment on the pleadings, which 'tests only the sufficiency of the complaint and does not resolve the merits of the plaintiff's claims'"). Plaintiff has failed to meet the evidentiary threshold to create a material issue of fact.

## I. Plaintiff's Untimely Documents Should Not Be Considered by the Court.

Pursuant to the Court's Order, (ECF 12), discovery closed on April 5, 2024. Subsequently, on April 15, 2024, the Board filed a Notice of Intent to File Dispositive Motion. (ECF 26). Immediately thereafter, Plaintiff—after nearly three years of not seeking *any medical treatment*—apparently visited a doctor on April 24, 2024. (ECF 30-3). On May 31, 2024—forty-six days after the close of discovery and twenty-nine days after the Board filed its Motion—Plaintiff simultaneously supplemented his discovery responses and used the improperly supplemented documents in support of his opposition brief. (ECF 30). Because these records were provided in blatant disregard for the deadlines set by this Court solely in an attempt to create an after-the-fact dispute of fact, the Court should not consider this documentation.[1]

---

[1] Not only untimely, Plaintiff's visit to a doctor in late April 2024 – nearly three years after his last visit – is irrelevant to the issue of *whether Plaintiff had a disability in July 2021*, as that doctor does not – and cannot – opine on whether Plaintiff was suffering

Courts have routinely refused to consider documents produced outside of the bounds of the discovery period set by the Court. *See, e.g.*, *Gomez v. Haystax Technology, Inc.*, 761 Fed.Appx. 220, 233 (4th Cir. 2019) (excluding a witness's testimony because her disclosure "three weeks after the close of discovery" was "grossly untimely"); *Southern v. Bishoff*, 675 Fed.Appx. 239, 249 (4th Cir. 2017) ("[W]e consider the summary judgment record as it existed on the date of the deadline for completing discovery[.]"); *Wilkins v. Montgomery*, 751 F.3d 214, 223 (4th Cir. 2014) (refusing to allow an expert disclosure because it was made "after the agreed-upon expert disclosure date, after discovery was closed, after Appellee filed a motion for summary judgment...."); *Gallagher v. Southern Source Packaging, LLC*, 568 F.Supp.2d 624, 631 (E.D.N.C. 2008) ("Courts distinguish 'true supplementation' (e.g., correcting inadvertent errors or omissions) from gamesmanship").

In discovery, Plaintiff represented that he only saw one medical provider, *on just one occasion*, regarding his alleged disability. *See* (ECF 28-7 (discovery responses listing only one medical provider). Although Plaintiff argued in his response to Defendant's Motion for Judgment on the Pleadings that "evidence *produced through discovery* will show that Rogers's plantar fasciitis continued to worsen after his termination," (ECF 17), Plaintiff produced no medical documentation during discovery to support that claim. Accordingly, Plaintiff's efforts to retroactively create a dispute of fact should not be considered by the Court.

---

from any kind of disability at any point between August 2, 2021 (when he was fully cleared to work without restriction) and April 24, 2024.

## II. Plaintiff Does Not Have a Disability as a Matter of Law.

Plaintiff's claim for disability discrimination fails as a matter of law as Plaintiff provided no documentation to support his allegation of an alleged disability. *See* (ECF 29, p. 8-14). Causes of action for disability discrimination and failure to accommodate *require* Plaintiff to *provide evidence* to prove he had a disability, not merely make conclusory allegations of the same. *See, e.g.*, *Cowgill v. First Data Technologies*, Inc., 41 F.4th 370, 379 (4th Cir. 2022); *Allen v. City of Raleigh*, 140 F.Supp.3d 470, 483 (E.D.N.C. 2015).

### A. Plaintiff has Failed to Produce Evidence of a Disability.

Apparently realizing his temporary ailment would be insufficient to support his claims, Plaintiff ignores facts and attempts to fill in the gaps in his case by using his affidavit to contradict the note from Plaintiff's nurse practitioner (ECF 15-1) (the "Note"). The Note on its face is insufficient to establish that Plaintiff had a disability. It excuses Plaintiff from work for two days and states that he "should have no prolonged standing for the next four days." *Id.* The Note and associated after-visit summary were *the only medical evidence in the record* at the time discovery closed—and the only medical record from the nearly three-year period since this claim arose. In other words, *nothing in the record supports Plaintiff's claim* that his minor impairment lasted past August 2, 2021. Instead, the evidence directly contradicts Plaintiff's contentions.

While the Court assumes factual allegations in the complaint are true on a motion for judgment on the pleadings, at summary judgment Plaintiff must actually produce facts to substantiate his claims. *See Boone*, 395 F.Supp.3d at 665-666 (quoting *Mitchell*, 12

F.3d at 1316). This difference is significant. Plaintiff alleged that he was told to "stay off his feet for four days," (ECF 1, ¶11), yet Plaintiff has produced no evidence to support this allegation. The evidence produced shows that Plaintiff "should have *no prolonged standing* for the next four days." (ECF 15-1).

Furthermore, in his Complaint, Plaintiff alleged that his impairment "continues to limit his ability to stand and walk for long periods of time" and had lasted for more than two years. (ECF 1, ¶21). While the Court was required to accept this allegation as true at the judgment on the pleadings stage, Plaintiff has come forward with no evidence to support his claim other than his self-serving affidavit. The only evidence in the record is that Plaintiff was released to return to work *without restriction* on August 2, 2021, and that Plaintiff *never* returned to the doctor about his alleged condition for years afterwards. Simply put, there is no evidence of *a continuing* impairment.

Plaintiff cannot create a genuine issue of material fact merely by submitting a contradictory affidavit. *Hardin v. Belmont Textile Machinery Co.*, 2010 WL 2293406, at *4 (W.D.N.C. June 7, 2010) (citing *Rohrbough v. Wyeth Labs., Inc.*, 916 F.2d 970, 975 (4th Cir.1990)) ("a party cannot create a genuine issue of material fact by submitting a contradictory affidavit or statement as a dilatory tactic."). *See also Massey v. Ojaniit*, 759 F.3d 343, 347 (4th Cir. 2014) (internal quotations omitted) (the Court "need not accept allegations that contradict matters properly subject to judicial notice or by exhibit"). As such, the Court should disregard Plaintiff's allegations which contradict the plain language of the Note.

Plaintiff attempts to rely on two cases from other jurisdictions for the proposition that he is not required to provide medical documentation to prove he had a disability. *See* (ECF 30). However, each of these cases states only that those long-term injuries which would be ***obvious*** to a jury, such as a "missing arm," do not require medical evidence to establish a disability. *Marinelli v. City of Erie, Pa.*, 216 F.3d 354, 360 (3d Cir. 2000); *Katz v. City Metal Co.*, 87 F.3d 26, 32 (1st Cir. 1996). Since Plaintiff does not have an obvious disability, these cases are inapplicable. While the *Katz* court left open the possibility that "a plaintiff ***might offer a description of treatments***" that would allow the jury to "determine that he did suffer from a disability within the meaning of the ADA," this possibility is not applicable, as Plaintiff failed to seek any further treatment for years. 87 F.3d at 32 (emphasis added). Therefore, Plaintiff has not produced evidence to support a prima facie case of disability discrimination.

Finally, Plaintiff ignores the controlling case law in this Circuit that a "plaintiff's own testimony (deposition and affidavit) as to the alleged limits on his ability to walk, without supporting medical testimony, simply is not sufficient to establish his prima facie case under the ADA." *Gallimore v. Newman Machine Co., Inc.*, 301 F.Supp.2d 431, 443 (M.D.N.C. 2004). *See also Tarokh v. Wal-Mart Stores East, LP*, 2:21-cv-02719, 2023 WL 10449106, at *6 (D.S.C. Nov. 13, 2023) (granting summary judgment because the plaintiff "failed to direct the Court to anything in the record regarding any follow-up evaluations with an orthopedist or indicating that a physician ever placed Plaintiff on restrictions").

B. The Board Never Regarded Plaintiff as Disabled.

Finally, Plaintiff argues the Board regarded him as disabled in a strained attempt satisfy the requirements of his claim. An individual can only be "regarded as" disabled under the ADA in two circumstances: "(1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities." *Blackburn v. Trustee of Guilford Technical Community College*, 733 F.Supp.2d 659, 662-63 (M.D.N.C. 2010). The first definition does not apply where, as here, Plaintiff has asserted that he is impaired. *See Bennet v. Kaiser Permanente*, 931 F.Supp.2d 697, 711 (D. Md. 2013). *See* (ECF 30-1, ¶¶5, 12, 18). As to the second definition, Plaintiff has provided no evidence— and none exists—to show that the Board mistakenly believed that Plaintiff had an actual, non-limiting impairment which substantially limited one or more major life activities. Instead, the Board's desire for Plaintiff to return to work indicates that the Board *did not* regard him as disabled. *See Taylor v. Rite Aid Corp.*, 993 F.Supp2d 551, 565 (D. Md. 2014) (holding that plaintiff could not prove she was "regarded as" disabled when the company offered her a position in which she could continue to work).

The cases cited by Plaintiff fail to support his contentions. For example, despite Plaintiff's repeated reliance on *Roberts v. Glenn Industrial Group, Inc*. on this point, *Roberts is not even a case about the ADA*, it is a case evaluating the Title VII sexual harassment standard. 998 F.3d 111, 126-127 (4th Cir. 2021). Likewise, *Haulbrook v. Michelin North America,* which Plaintiff relies on for his argument that the Board had a

"discriminatory motive" rendering it liable, (ECF 30, p.10), does not hold in Plaintiff's favor. 252 F.3d 696, 705 (4th Cir. 2001). *Haulbrook* emphasized that the ADA "is not a sword enabling employees who are not, in fact, substantially limited in any major life activity to refuse reasonable requests by their superiors for information and then plead their superiors' resulting lack of information as a 'regarded-as' disability." *Id.* As such, the Fourth Circuit held that it

> could [not] infer just from the timing of Haulbrook's termination that he was "regarded as" disabled. Instead, the compelling inference supported by the record taken as a whole is that [the company] simply ran out of patience after Haulbrook consistently refused to communicate in a reasonable manner with his superiors.

*Id.*

Similarly here, the Court should not accept Plaintiff's allegation that the temporal proximity of Plaintiff's visit to the nurse practitioner and his termination satisfies Plaintiff's burden of production at the summary judgment stage. The only inference to be drawn from this record is that the Board "simply ran out of patience" after Plaintiff lied about the Note excusing his absence, particularly given his history of well-documented policy violations. *See id.* & Section V *infra.* There is no basis for any contention that the Board regarded Plaintiff as having a disability under the ADA.

### III. Even if Plaintiff Had a Disability, His Failure to Accommodate Claim Fails Because He Precluded the Board from Engaging in an Interactive Process.

Even if Plaintiff did have a disability, the Board did not fail to accommodate Plaintiff *because Plaintiff never requested any accommodation.* Instead, Plaintiff *told* his supervisor he would not be coming to work on Thursday and Friday, *lied* that he had a

doctor's note which would excuse this absence, and indicated that he would return to work as usual on Monday. (ECF 28-1 ("I'll be out Thursday and Friday....I have a doctors [note] as well.")). Plaintiff does not dispute this sequence of events. Simply put, Plaintiff merely told his supervisor that he would be taking time off work rather than requesting any sort of accommodation for his alleged disability.

The duty under the ADA for an employer to engage in the interactive process is "triggered when an employee communicates to his employer his disability and his desire for an accommodation for that disability." *Allen v. City of Raleigh*, 140 F.Supp.3d 470, 485 (E.D.N.C. 2015). "Neither Party should be able to cause a breakdown" in this process, and a "party that fails to communicate, by way of initiation or response," may not inflict liability for their "obstruct[ion] or delay." *Id.* (quoting *Crabill v. Charlotte Mecklenburg Bd. of Educ.*, 423 Fed.Appx. 314, 323 (4th Cir.2011)) (holding that the plaintiff could not recover on their failure to accommodate claim because plaintiff had caused the breakdown of the interactive process).

Plaintiff cannot inform his supervisor that he would be missing workdays and returning Monday, lie that he had a doctor's note excusing his absence, and simultaneously maintain that the Board failed to accommodate him. It was this act of deception which resulted in Plaintiff's termination and this behavior which prevented any form of interactive process.

### IV. Plaintiff's FMLA Claims Fail as a Matter of Law.

Plaintiff misstates the elements of his FMLA claims. (ECF 30, p.18). Plaintiff's claim for retaliation under the FMLA is without merit because Plaintiff never engaged in

any form of protected activity. A prima facie case of FMLA retaliation *requires* Plaintiff to provide evidence that he engaged in protected activity, which can include either opposition or participation conduct. *See EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 406 (4th Cir. 2005). "Opposition activity includes utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities" while "[p]articipation activity, on the other hand, includes making a charge, testifying, assisting, or participating in any manner in a Title VII investigation, proceeding, or hearing." *Id. Robbins v. Rowan Vocational Opportunities, Inc.*, 2018 WL 2338795, at *7 (M.D.N.C. May 23, 2018) (citing *Cumbie v. Gen'l Shale Brick, Inc.*, 302 Fed.Appx. 192, 194 (4th Cir. 2008)) (internal quotations omitted). There is no evidence—and Plaintiff has not asserted—that he ever engaged in participation or opposition conduct under the FMLA.

Further, Plaintiff admits that he *never* received a second treatment within thirty days. (ECF 30, p.17). To address this fatal deficiency, Plaintiff urges the Court to adopt an exemption to this statutory requirement because "the facts of this case present extenuating circumstances" without providing *any* case law to support such a carve out. (*Id.*). The Code of Federal Regulations defines extenuating circumstances under the FMLA as "circumstances beyond the employee's control that prevent the follow-up visit from occurring as planned by the health care provider." 29 C.F.R. § 825.115. The regulations further provide an example, explaining that "extenuating circumstances exist if a health care provider determines that a second in-person visit is needed within the 30-day period, but the health care provider does not have any available appointments during

that time period." *Id.* No such facts exist here. Plaintiff did not attend *any* follow-up appointment until he became aware that the Board would be filing this Motion—nearly three years after his initial visit.

Because continuing treatment is a requisite element of an FMLA interference claim and Plaintiff has unequivocally admitted that he never sought such treatment, the Board is entitled to judgment as a matter of law.

V.   **Plaintiff Ignores His Own Extensive Disciplinary Record.**

The Board is entitled to judgment as a matter of law because the records submitted alongside this Motion clearly demonstrate the Board's legitimate nondiscriminatory reason for terminating Plaintiff's employment. Although Plaintiff remarkably alleges that "[w]hat evidence Defendant did provide shows that Rogers had no issues with" his work performance, personal hygiene, and attendance (ECF 30, p.21), the documents attached to the Board's Motion tell a different story. Exhibit B to the Board's Motion contained eight separate constructive advice records or event summaries for Plaintiff's violations of Board policies during his employment with the Board. (ECF 28-4). As such, the evidence is overwhelming that the Board took issue with Plaintiff's job performance.

Plaintiff next argues that "none of the write-ups Defendant presents says anything about hygiene issues." (ECF 30, p.22). Yet, on December 24, 2020, Plaintiff was written up for, among other things, failing to wear a mask despite the Board's clear requirement that all employees properly wear masks while working. (ECF 28-4). Additionally, Plaintiff was later "sent back home to address a clothing issue based on company

standards (Sagging)." (*Id.* at p.7). These policy violations were merely two of the various infractions which ultimately led to Plaintiff's termination.

Finally, Plaintiff avers that "none of Rogers's write-ups refer to any attendance issues" (ECF 30, p.22). Nevertheless, Plaintiff's attendance issues have been described ad nauseum throughout the briefings in this case. Plaintiff failed to report to work on a day when the Note from his nurse practitioner specifically cleared him to do so. Upon realizing that Plaintiff had not only failed to report to work on a day when he should have appeared, but he *lied* to his employer about being excused from work that day, the Board decided to terminate Plaintiff's employment.

Thus, although Plaintiff argues that the Board's reasons for terminating Plaintiff's employment are "not supported by any evidence," (ECF 30, p.20) the documents from Plaintiff's personnel file establish a legitimate, nondiscriminatory reason for terminating Plaintiff.

## **CONCLUSION**

For the reasons stated, the Court should grant the Board's Motion.

This the 14th day of June, 2024.

                                      */s/ Daniel D. Stratton*
                                      Denis E. Jacobson
                                      NC State Bar No. 13559
                                      Email: djacobson@tuggleduggins.com
                                      Daniel D. Stratton
                                      NC State Bar No. 52416
                                      Email: dstratton@tuggleduggins.com
                                      Claire E. Thompson
                                      NC State Bar No. 61140
                                      Email: cthompson@tuggleduggins.com

                                      *Attorneys for Defendant*

OF COUNSEL:

TUGGLE DUGGINS P.A.
P.O. Box 2888
Greensboro, NC 27402
Telephone: (336) 378-1431
Facsimile: (336)274-6590

# CERTIFICATE OF WORD COUNT

The undersigned hereby certifies that the foregoing document complies with the type volume limitations of L.R. 7.3(d)(1) and contains 3,117 words, not including those portions exempted by the rule.

This the 14th day of June, 2024.

                                              */s/ Daniel D. Stratton*
                                              Daniel D. Stratton
                                              NC State Bar No. 52416

                                              *Attorney for Defendant*

OF COUNSEL:

TUGGLE DUGGINS P.A.
P.O. Box 2888
Greensboro, NC 27402
Telephone: (336) 378-1431
Facsimile: (336)274-6590

# CERTIFICATE OF SERVICE

This is to certify that the undersigned has this date served the foregoing **Reply Brief in Support of Defendant's Motion for Summary Judgment** in the above-entitled action upon all other parties to this cause through the Court's CM/ECF system as follows:

>Wilson F. Fong
>HENSEL LAW, PLLC
>P.O. Box 39270
>Greensboro, NC 27438
>will.fong@hensellaw.com
>
>*Attorney for Plaintiff*

This the 14th day of June, 2024.

>*/s/ Daniel D. Stratton*
>Daniel D. Stratton
>NC State Bar No. 52416
>
>*Attorney for Defendant*

OF COUNSEL:

TUGGLE DUGGINS P.A.
P.O. Box 2888
Greensboro, NC 27402
Telephone: (336) 378-1431
Facsimile: (336)274-6590