IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| CURTIS ROGERS, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:23-CV-621 |
| | ) | |
| CITY OF GREENSBORO ABC BOARD, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Catherine C. Eagles, Chief District Judge.

After being fired from his job, Curtis Rogers filed this lawsuit against his former employer, the City of Greensboro ABC Board, alleging violations of the Americans with Disabilities Act and the Family and Medical Leave Act. The Board moves for summary judgment. There are genuine disputes of material fact about his ADA disability discrimination, FMLA interference, and FMLA retaliation claims, and the Board's motion for summary judgment as to those claims will be denied. But Mr. Rogers has not presented evidence sufficient to support an inference that he requested any form of ADA accommodation, so the Board's motion for summary judgment on the ADA failure to accommodate and retaliation claims will be granted.

I.  **Procedural Background**

After Mr. Rogers filed a lawsuit against the Board in July 2023, Doc. 1, the Board moved for judgment on the pleadings. Doc. 15. The Court denied the motion, Doc. 25, and all five of Mr. Rogers' claims against the Board proceeded: disability discrimination,

failure to accommodate, and retaliation claims under the ADA, Doc. 1 at ¶¶ 25–35, and interference and retaliation claims under the FMLA. *Id.* at ¶¶ 36–41. Discovery has concluded, Doc. 12, and the Board now moves for summary judgment. Doc. 28.

## II. Facts

Many of the facts are undisputed. To the extent they are not, the evidence is viewed in the light most favorable to the non-moving party, Mr. Rogers.

After experiencing significant pain in his foot, Doc. 30-1 at p. 1 ¶ 4, Mr. Rogers sought medical care on July 28, 2021. *Id.* at p. 6. A nurse practitioner examined Mr. Rogers' foot and diagnosed him with plantar fasciitis. *Id.* at p. 7. She gave Mr. Rogers two documents: a letter stating that Mr. Rogers "may return to work on 07/30/2021" but that he should have "[n]o prolonged standing for the next 4 days," *id.* at p. 6, and an after-visit summary stating that Mr. Rogers was seen for plantar fasciitis and should return for a follow-up appointment in about one week. *Id.* at p. 7.

On the evening of July 28, 2021, Mr. Rogers informed his supervisor, Jason Milliken, by a text message and a phone call about the plantar fasciitis diagnosis and of his request to take leave on July 29 and 30, 2021. Doc. 28-1 at 2; Doc. 28-7 at 4; Doc. 30-1 at p. 2 ¶ 8. During their phone call, Mr. Rogers told Mr. Milliken that he could not put weight on his foot for four days and that he would bring a letter from his medical provider when he returned to work on August 2, 2021. Doc. 28-7 at 4; Doc. 30-1 at p. 2 ¶ 8. Mr. Milliken approved the leave request. Doc. 28-1 at 2.

Mr. Rogers returned to work on August 2, 2021. Doc. 30-1 at p. 2 at ¶ 9. He brought Mr. Milliken his medical provider's letter and after-visit summary. *Id.* at p. 2

2

¶ 10; Doc. 28-2 at ¶ 8.[1]  Mr. Milliken asked Mr. Rogers why he did not come to work on July 30, 2021, and Mr. Rogers explained that because he could not put weight on his foot, he could not complete his job duties, which required standing and walking.  Doc. 30-1 at p. 2 ¶¶ 11–12.  Mr. Milliken told Mr. Rogers that if he could not be present on "truck days," a busy shift when employees unload trucks, then he did not need him, and that he would talk to the Board's CEO.  *Id.* at p. 2 ¶ 13; Doc. 28-7 at 4; Doc. 28-6 at ¶ 5.

Three days later, the Board terminated Mr. Rogers' employment.  Doc. 28-4 at 4.  In its termination letter, the Board stated that Mr. Rogers "failed to comply" with work performance, personal hygiene, and attendance standards.  *Id.*

Before his termination, Mr. Rogers worked for the Board for more than five years, *id.* at 6, and during that period, he received "constructive advice," including in January 2020, for performing work too slowly, *id.* at 8, and in March 2021, for not abiding by the dress code.  *Id.* at 7.  In December 2020, the Board placed Mr. Rogers on a 30-day probation for safety and health policy violations.  *Id.* at 5.  At some point, the Board gave Mr. Rogers a raise.  Doc. 6 at p. 3 ¶ 20.

After his initial medical appointment on July 28, 2021, Mr. Rogers did not have any follow-up appointments with a medical provider about his plantar fasciitis condition.  Doc. 28-7 at 10–11; Doc. 30-1 p. 3 at ¶ 17.  Mr. Rogers attested that he did not go for a

---

[1] The Board's Human Resources Director attests that Mr. Roger's personnel file contains a copy of the medical professional's letter but no copy of the after-visit summary and that if Mr. Rogers had provided the after-visit summary, it would have been added to his personnel file. Doc. 28-2 at ¶ 8.  But at summary judgment, courts construe all facts "in the light most favorable to the nonmoving party."  *Bandy v. City of Salem*, 59 F.4th 705, 709 (4th Cir. 2023).

3

follow-up appointment because he lost his health insurance after the Board terminated his employment. Doc. 30-1 at p. 3 ¶ 17.

After his employment with the Board ended, Mr. Rogers' planter fasciitis worsened, limiting the amount of time he can walk or stand. *Id.* at pp. 3–4 ¶ 18. It has continued to affect his ability to work in jobs requiring standing and walking. Doc. 28-7 at 9–10. After his discharge by the Board, Mr. Rogers worked for Golden State Foods Corp., but he left that position after four months "because he could not keep up with the physical requirements of the work . . . due to his plantar fasciitis" and the new job at Murrows Transfer Inc. "was described to him as [requiring] less walking and lifting, and not a touch freight job." *Id.* Mr. Rogers left the job at Murrows Transfer Inc. after seven months to take a position in logistics because it is "completely sedentary." *Id.* at 10.

## III. Discussion

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In analyzing a summary judgment motion, courts "construe all facts and reasonable inferences in the light most favorable to the nonmoving party." *Bandy v. City of Salem*, 59 F.4th 705, 709 (4th Cir. 2023).

### A. ADA Disability Discrimination Claim

To prove disability discrimination, a plaintiff must show that he was (i) disabled or regarded as disabled, (ii) discharged, (iii) fulfilling his employer's legitimate expectations

4

when he was discharged, and that (iv) the circumstances of his discharge raise a reasonable inference of unlawful discrimination. *Cowgill v. First Data Techs., Inc.*, 41 F.4th 370, 379 (4th Cir. 2022); 42 U.S.C. § 12102(1) (stating that a person is disabled under the ADA if he is "regarded as having" an impairment "that substantially limits one or more major life activities"). The evidence, when viewed in the light most favorable to Mr. Rogers, creates disputed questions of material fact that require a trial.

First, it is undisputed that the Board discharged Mr. Rogers from employment. Doc. 28-4 at 4; Doc. 30-1 at p. 3 ¶ 14. The Board provided Mr. Rogers a letter informing him of his employment termination effective August 5, 2021. Doc. 28-4 at 4.

Second, Mr. Rogers' testimony, if credited by the jury, is sufficient to support a finding that he is disabled and that the Board regarded him as disabled. A person is disabled under the ADA if he has "a physical or mental impairment that substantially limits one or more major life activities" or is "regarded as having such an impairment." § 12102(1). "The term substantially limits shall be construed broadly in favor of expansive coverage, and that term is not meant to be a demanding standard." *Thomas v. City of Annapolis*, 851 F. App'x 341, 348 (4th Cir. 2021) (cleaned up and quoting 29 C.F.R. § 1630.2(j)(1)(i)); *see also Israelitt v. Enter. Servs. LLC*, 78 F.4th 647, 654 (4th Cir. 2023). "Major life activities" include standing and walking. 42 U.S.C. § 12102(2)(A).

Here, Mr. Rogers has testified that after experiencing significant pain in his foot, Doc. 30-1 at p. 1 ¶ 4, he sought care from a medical professional who diagnosed him with plantar fasciitis in July 2021, *id.* at pp. 6–7; that his plantar fasciitis condition has

5

continued to worsen, preventing him from walking and standing for prolonged periods of time, *id.* at pp. 3–4 ¶ 18; and that because of his worsening condition and inability to walk and stand for prolonged periods, he was forced to stop working in delivery, freight, or warehouse jobs, *id.*, and take work that is "completely sedentary." Doc. 28-7 at 9–10. Taken together, this testimony supports a finding that he is substantially limited in standing and walking and thus is disabled under the ADA.

The Board contends that Mr. Rogers cannot prove that his plantar fasciitis constitutes a disability under the ADA because he has provided no evidence of a follow-up medical appointment or treatment. Doc. 29 at 12–13. Mr. Rogers acknowledges that he did not seek further medical care after his first medical appointment on July 28, 2021. *See* Doc. 30 at 8; Doc. 30-1 at p. 3 ¶ 17.[2] But such medical evidence is not necessary to prove a disability within the meaning of the ADA. *Gallimore v. Newman Mach. Co.*, 301 F. Supp. 2d 431, 443–44 (M.D.N.C. 2004).[3]

---

[2] On April 24, 2024, Mr. Rogers had an appointment with a medical provider, Doc. 30-3 at 2–5, and Mr. Rogers attached this medical record to his response brief, submitted on May 31, 2024. Doc. 30 at 23. Discovery closed on April 5, 2024. Doc. 12. Because courts "consider the summary judgment record as it existed on the date of the deadline for completing discovery," the Court will not consider Mr. Rogers' April 24, 2024, medical record. *Southern v. Bishoff*, 675 F. App'x 239, 249 (4th Cir. 2017).

[3] In the briefing, the Board twice provides inaccurate and misleading citations to and quotations from *Gallimore*. Doc. 29 at 12; Doc. 31 at 6. The Board represents that the *Gallimore* court held that medical evidence was required, including the quote from the case that "plaintiff's own testimony (deposition and affidavit) as to the alleged limits on his ability to walk, without supporting medical testimony, simply is not sufficient to establish his prima facie case under the ADA." Doc. 29 at 12 (quoting *Gallimore*, 301 F. Supp. at 443); Doc. 31 at 6 (quoting the same). But that quoted text is from *Douglas v. Victor Cap. Grp.*, 21 F. Supp. 2d 379, 384 (S.D.N.Y. 1998), which the *Gallimore* court quoted to explain that a *per se* rule that medical evidence is required to prove a disability is a minority view. 301 F. Supp. 2d at 443.

The Board also contends that Mr. Rogers does not have a disability because his plantar fasciitis does not substantially limit a major life activity. Doc. 29 at 11–12 (citing *Israelitt*, 78 F.4th at 654; *Tarokh v. Wal-Mart Stores E., LP*, No. 21-CV-2719, 2023 WL 10449106, at *5–6 (D.S.C. Nov. 13, 2023) (Mag. J., recommendation), *adopted*, 2024 WL 1342743 (D.S.C. Mar. 29, 2024)). But those cases are easily distinguishable. In *Israelitt*, the court held that the plaintiff's arthritic toe joint did not substantially limit the plaintiff's mobility because the evidence showed he "walked at length" for work and pleasure. 78 F.4th at 655. Similarly, in *Tarokh*, the judge held that the plaintiff's knee injury did not constitute a disability under the ADA because the plaintiff testified that the work he performed at the time was "all physical" and required him to walk several miles per day, thus making it unreasonable to conclude that his injury substantially impaired his ability to walk. 2023 WL 10449106, at *5. In contrast here, Mr. Rogers has provided evidence tending to show that because of his plantar fasciitis, he was unable to continue working in delivery and warehouse jobs and is now employed in a sedentary position. Doc. 28-7 at 9–10.

Even if a jury does not credit that evidence, it could find Mr. Rogers was disabled under the ADA based on evidence that the Board regarded him as having an impairment that substantially limited a major life activity. One may be regarded as having a disability where "a covered entity mistakenly believes that an actual, nonlimiting impairment

---

The court in *Gallimore* explicitly rejected that position, holding instead that it "agrees with the majority view that the absence of medical evidence is not necessarily fatal to a plaintiff's ADA claim." *Id.* at 445 (cleaned up).

7

substantially limits one or more major life activities." *Haulbrook v. Michelin N. Am.*, 252 F.3d 696, 703 (4th Cir. 2001) (cleaned up). "When an employee asserts . . . that he was regarded as disabled, the analysis focuses on the reactions and perceptions of the employer's decisionmakers who worked with the employee." *Wilson v. Phoenix Specialty Mfg. Co.*, 513 F.3d 378, 385 (4th Cir. 2008) (cleaned up).

Here, Mr. Rogers told his supervisor about his plantar fasciitis diagnosis and requested leave. Doc. 28-1 at 2. When he returned to work and provided his supervisor with medical records indicating he had planter fasciitis, had limitations on his ability to work, and needed follow-up care, the supervisor told Mr. Rogers he did not need him if he could not help on truck days[4] and that he would talk to the Board's CEO. Doc. 30-1 at p. 2 ¶¶ 10–13. Mr. Rogers has identified at least two other people who heard the supervisor state that he does not want or need employees who cannot help in the warehouse on truck days. Doc. 28-7 at 4–5. Within a week of Mr. Rogers' disclosure of his diagnosis, the Board fired him. Doc. 28-4 at 4; *see also Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 126–27 (4th Cir. 2021) (finding causal relationship when there is close proximity between disclosure of information and adverse employment action).

The Board contends that it did not regard Mr. Rogers as having a disability because it "specifically demonstrated its desire for Plaintiff to return to work the day the

---

[4] The Board has presented evidence showing that July 30, 2021, was not a truck day. Doc. 28-5 at 3. That evidence is not dispositive because Mr. Rogers did miss a truck day on July 29, 2021, due to his alleged disability. *Id.*; Doc. 28-1 at 2. Thus, the supervisor's statement may have been about Mr. Rogers' absence on July 29, 2021, and it tends to show his perception of Mr. Rogers' inability to perform his work duties.

8

Note cleared him to do so." Doc. 29 at 10.  But the Board's evidence that it wanted Mr. Rogers to return to work merely creates a disputed question of fact.

As to the third and fourth elements, Mr. Rogers has provided evidence that he was fulfilling his employer's legitimate expectations when he was discharged and that the circumstances of his discharge raise a reasonable inference of unlawful discrimination. Mr. Rogers worked for the Board as a warehouse employee for more than five years, Doc. 28-4 at 6, and the Board acknowledges that it awarded him a raise, Doc. 6 at p. 3 ¶ 20, showing that at some point it was satisfied with his performance.  The Board has presented evidence to the contrary, but that merely creates a disputed question of fact.

The Board points to evidence that it terminated Mr. Rogers for a legitimate, nondiscriminatory reason.  Doc. 29 at 13–14.  Once a plaintiff establishes a prima facie case of disability discrimination, the burden shifts to the defendant to "show that its decision was made for a legitimate, nondiscriminatory reason." *Neal v. E. Carolina Univ.*, 53 F.4th 130, 135 (4th Cir. 2022).  If the defendant makes that showing, "the presumption of discrimination is rebutted and the burden returns to the plaintiff to prove that the . . . proffered reason was a pretext for discrimination." *Id.*  Here, there is sufficient evidence for a jury to conclude that the Board's explanation for discharging Mr. Roger was a pretext.  The Board's termination letter states that Mr. Rogers "failed to comply" with undefined standards, Doc. 28-4 at 4, but there are disputed questions about whether the employment records show a history of non-compliance with such standards. *Id.* at 5–10.  Mr. Rogers has also presented evidence that the Board gave him a raise, Doc. 6 at p. 3 ¶ 20, which tends to show the Board's satisfaction with Mr. Rogers' job

9

performance and its lack of ongoing concerns about his compliance with its employment standards.  Finally, the termination letter followed closely on the heels of Mr. Rogers' disclosure of his plantar fasciitis diagnosis and his supervisor's statements tending to indicate that he would be terminated because of his disability.  *See Roberts,* 998 F.3d at 126–27 (finding causal relationship when there is close proximity between disclosure of information and adverse employment action).  A reasonable jury could find that the proffered reason was a pretext for discrimination.

There is sufficient evidence to show that Mr. Rogers has a disability within the meaning of the ADA or was regarded as disabled and that he was discharged because of his disability.  The Board's motion for summary judgment as to the disability discrimination claim, Doc. 1 at ¶¶ 25–28, will be denied.

## B.     ADA Failure to Accommodate Claim

To prevail on a failure to accommodate claim, "a plaintiff must show (i) she was disabled, (ii) the employer had notice of her disability, (iii) she could perform the essential functions of her position with a reasonable accommodation, and (iv) the employer refused to make such accommodation."  *Lashley v. Spartanburg Methodist Coll.*, 66 F.4th 168, 178 (4th Cir. 2023) (cleaned up).  The "burden of requesting an accommodation is light," *Kelly v. Town of Abingdon*, 90 F.4th 158, 167 (4th Cir. 2024); an employee must only "communicate his disability and desire for an accommodation." *Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 581 (4th Cir. 2015) (cleaned up).  But "a plaintiff's request for time off does not qualify as a request for [an ADA] accommodation."  *Granda v. Old Dominion Freight Line, Inc.*, No. 19-CV-3294, 2021

10

WL 4472743, at *6 (D.S.C. Sept. 30, 2021); s*ee also McCormack v. Blue Ridge Behav. Healthcare*, 523 F. Supp. 3d 841, 858 (W.D. Va. 2021) (collecting cases), *aff'd sub nom. McCormack v. Blue Ridge Behav. Healthcare, Inc.*, No. 21-CV-1447, 2022 WL 16630565 (4th Cir. Nov. 2, 2022) (per curiam) (unpublished).

On July 28, 2021, Mr. Rogers informed his supervisor about his plantar fasciitis diagnosis and of his request to take leave on July 29 and 30, 2021. Doc. 28-1 at 2; Doc. 28-7 at 4; Doc. 30-1 at p. 2 ¶ 8. In his complaint, Mr. Roger states that he requested "the reasonable accommodation of FMLA-protected leave." Doc. 1 at ¶ 31. There is no evidence showing that Mr. Rogers requested any other form of accommodation, and FMLA leave alone is not an accommodation under the ADA. *McCormack*, 523 F. Supp. 3d at 858.

Mr. Rogers cites *Wilson v. Dollar General Corp.* to support his contention that requesting or taking leave can constitute a reasonable ADA accommodation. Doc. 30 at 12 (citing 717 F.3d 337, 345 n.7 (4th Cir. 2013)). In that case, the court cited then-existing regulations that allowing the use of accrued paid leave or providing additional unpaid leave for treatment is an ADA accommodation, and the court "assume[d], without deciding" that the plaintiff's request for leave was reasonable. *Wilson*, 717 F.3d at 344–45. But that regulation, 29 C.F.R. § 1630.2(o), no longer includes the provision cited in *Wilson* that using leave is a reasonable accommodation under the ADA, and more recently, the Fourth Circuit affirmed a district court opinion holding that requesting leave does not constitute an ADA accommodation. *McCormack*, 2022 WL 16630565, at *1.

11

There is no evidence that Mr. Rogers requested a reasonable accommodation under the ADA. In the absence of evidence on this essential element, he cannot prevail. It is not necessary to address the other elements of this cause of action. The Board's motion for summary judgment as to his failure to accommodate claim, Doc. 1 at ¶¶ 29–32, will be granted.

C. **FMLA Interference Claim**

To prove an FMLA interference claim, an employee must show that "(1) he is entitled to an FMLA benefit; (2) his employer interfered with the provision of that benefit; and (3) that interference caused harm." *Adams v. Anne Arundel Cnty. Pub. Schs.*, 789 F.3d 422, 427 (4th Cir. 2015). To be entitled to an FMLA benefit, a plaintiff must first show that he is "afflicted with an FMLA-qualifying condition." *Rhoads v. FDIC*, 257 F.3d 373, 384 (4th Cir. 2001). Under the FMLA, a qualifying "serious health condition" means "an illness, injury, impairment, or physical or mental condition that involves continuing treatment by a health care provider." 29 U.S.C. § 2611(11)(B).

There is a genuine dispute of material fact about whether Mr. Rogers has an FMLA-qualifying serious health condition. After a clinical evaluation, a medical professional diagnosed Mr. Rogers with plantar fasciitis on July 28, 2021, Doc. 30-1 at p. 7, and provided him with a letter stating that he should have "[n]o prolonged standing for the next 4 days" and an after-visit summary stating that he should come back for follow-up care. *Id.* at pp. 6–7.

The Board contends that Mr. Rogers does not have a serious health condition, relying on FMLA regulations that require an employee to obtain follow-up medical care,

12

which Mr. Rogers admittedly did not do during the relevant time. Doc. 29 at 14–15. But Mr. Rogers testified that he lost his health insurance when he was discharged, which made him unable to obtain follow-up medical care, Doc. 30-1 at p. 3 ¶ 17, and, assuming the regulations apply, as the Board contends, they allow for extenuating circumstances beyond the employee's control. 29 C.F.R. § 825.115(a)(5).

There is a genuine dispute of material fact about whether Mr. Rogers had an FMLA-qualifying condition entitling him to an FMLA benefit. The Board's motion for summary judgment on the FMLA interference claim, Doc. 1 at ¶¶ 36–38, will be denied.

### D. Retaliation Claims

To prove a retaliation claim under the FMLA and the ADA, the plaintiff must show that 1) he engaged in protected activity; 2) his employer took an adverse employment action against him; and 3) there was a causal link between the two events. *See Vannoy v. Fed. Rsrv. Bank of Richmond*, 827 F.3d 296, 304 (4th Cir. 2016) (FMLA); *Jacobs*, 780 F.3d at 577 (ADA). A plaintiff can show causation in a retaliation case if there is "close temporal proximity between activity protected by the statute and an adverse employment action." *Waag v. Sotera Def. Sols., Inc.*, 857 F.3d 179, 192 (4th Cir. 2017).

#### 1. Retaliation under the FMLA

The FMLA protects "employees from discrimination or retaliation for exercising their substantive rights under the FMLA," *Vannoy*, 827 F.3d at 304 (citing *Dotson v. Pfizer, Inc.*, 558 F.3d 284, 294 (4th Cir. 2009)), which includes the right to take leave because of "a serious health condition that makes the employee unable to perform the

13

functions of the position." 29 U.S.C. § 2612(a)(1)(D).  The FMLA regulations state that "employers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions, or disciplinary actions." 29 C.F.R. § 825.220(c); *Dotson*, 558 F.3d at 294–95.

      Here, there is a genuine dispute of material fact about whether the Board retaliated against Mr. Rogers for exercising his right to take FMLA leave.  On July 28, 2021, Mr. Rogers informed his supervisor about his plantar fasciitis diagnosis and requested to take leave.  Doc. 28-1 at 2; Doc. 28-7 at 4; Doc. 30-1 at p. 2 ¶ 8.  His supervisor approved his request.  Doc. 28-1 at 2.  But when Mr. Rogers returned to work, Doc. 30-1 at p. 2 at ¶ 9, the supervisor questioned Mr. Rogers about why he did not return earlier.  *Id.* at p. 2 ¶ 11.  The supervisor told Mr. Rogers that if he could not be present on busy days then he did not need him, and that he would talk to the Board's CEO.  *Id.* at p. 2 ¶ 13.  At least two other people heard the supervisor state that he does not want or need employees who cannot help on busy days.  Doc. 28-7 at 4–5.  Three days after Mr. Rogers returned to work, the Board discharged him.  Doc. 28-4 at 4.  This is sufficient for a jury to conclude that the Board retaliated against Mr. Rogers for taking FMLA leave.

      The Board contends Mr. Rogers cannot prove retaliation because he "never engaged in any form of protected activity." Doc. 31 at 9–10; Doc. 29 at 19.  But as already explained, exercising the right to take FMLA leave itself is a protected activity. *See Dotson*, 558 F.3d at 294–95; *see also Roberts v. Gestamp W. Va., LLC*, 45 F.4th 726, 738 (4th Cir. 2022).  Because requesting leave is a protected activity under the FMLA, there is a genuine dispute of material fact about whether the Board retaliated against Mr.

14

Rogers for exercising his right to take such leave. The Board's motion for summary judgment on the retaliation claim brought under the FMLA, Doc. 1 at ¶¶ 39–41, will be denied.

### 2. Retaliation under the ADA

The ADA provides that "[n]o person shall discriminate against any individual" for "oppos[ing] any act or practice made unlawful by [the ADA]," 42 U.S.C. § 12203(a), or for "requesting an accommodation" for a disability. *Jacobs*, 780 F.3d at 577. Here, Mr. Rogers has not alleged or presented any evidence that he expressed opposition to anything the ADA makes unlawful. *See* Doc. 1 at ¶ 33; Doc. 30 at 18–19. And the only ADA accommodation Mr. Rogers alleges he requested was FMLA leave, Doc. 1 at ¶ 33; Doc. 30 at 19, but a request for leave is not an ADA accommodation or a protected activity. *See McCormack*, 523 F. Supp. 3d at 858.

Mr. Rogers contends that "[r]equests for leave are protected activities under the ADA." Doc. 30 at 18 (citing *Jacobs*, 780 F.3d at 577). But in that case, the plaintiff did not allege retaliation for requesting leave; instead, she had requested reassignment to a position with less direct interaction with other people to accommodate her social anxiety disorder. *See Jacobs*, 780 F.3d at 565, 577. The Fourth Circuit did hold that denying leave can be evidence of an adverse employment action, but the court did not say that requesting such leave is a protected activity. *See id.* at 578 n.17.

Because requesting leave is not a protected activity under the ADA and it is the only form of accommodation that Mr. Rogers alleges he requested, there is not a genuine dispute of material fact about Mr. Rogers' retaliation claim. The Board's motion for

15

summary judgment on the retaliation claim brought under the ADA, Doc. 1 at ¶¶ 33–35, will be granted.

It is **ORDERED** that the motion for summary judgment filed by the defendant, City of Greensboro ABC Board, Doc. 28, is **GRANTED in part and DENIED in part** as follows:

1. The ADA failure to accommodate and ADA retaliation claims are **DISMISSED**; and

2. The motion is otherwise **DENIED**, and the ADA disability discrimination, FMLA interference, and FMLA retaliation claims will proceed to trial.

This the 24th day of July, 2024.

_____
UNITED STATES DISTRICT JUDGE